In re ISAACS.

(Supreme Court, Appellate Division, First Department. April 14, 1916.)

ATTORNEY AND CLIENT ☞45—DISBARMENT PROCEEDINGS—GROUNDS.

Under Judiciary Law (Consol. Laws, c. 30) § 88, amended by Laws 1912, c. 253, authorizing the Appellate Division of the Supreme Court to censure, discipline, or remove from office any attorney guilty of professional malpractice, fraud, deceit, crime, or misdemeanor, an attorney can be disbarred for fraud in the sale of his property to one to whom he sustained no professional relations.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 63; Dec. Dig. ☞45.]

Disbarment proceedings against Edward A. Issacs, an attorney. On report of the official referee finding respondent guilty of professional misconduct. Respondent disbarred.

Argued before CLARKE, P. J., and DOWLING, SMITH, PAGE, and DAVIS, JJ.

Einar Chrystie, of New York City (William L. Wemple, of New York City, of counsel), for petitioner.

Henry A. Wise, of New York City (Henry L. Scheuerman and Byrd D. Wise, both of New York City, on the brief), for respondent.

CLARKE, P. J. This is the usual proceeding brought by the Association of the Bar of the City of New York to discipline an attorney for unprofessional practice. Respondent was admitted to the bar in September, 1889, and has ever since and is now practicing as an attorney and counselor at law in the First judicial district. The petition charges that the respondent has been guilty of misconduct in his office as an attorney and counselor at law as follows: Early in 1910 the respondent was the owner of real property at the corner of 146th street and Seventh avenue, and with three other persons, named Friedus, Nail, and Claman, conspired to induce Abraham Kornbluth to purchase the property far in excess of its real value. To carry out this purpose the respondent made a fictitious lease to an irresponsible person named Johnson, whereby the ground floor of the property was pretended to be leased to Johnson for 21 years at an annual rental which was to begin at $6,000 and increase to $7,500 at the end of the term, Johnson to make extensive alterations at his own expense, to install fixtures and pool tables, which were to be deemed part of the

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

realty, pay the water bills, and deposit $1,000 as security for the performance of the lease. Alterations were made, and Friedus in April, 1910, took Kornbluth to see the property. On that occasion Johnson, and on a later occasion the respondent, represented to Kornbluth that Johnson had spent $15,000 for alterations and for the installation of the fixtures. The respondent and the others acting with him represented to Kornbluth that Johnson was a responsible person, and that he paid the rent regularly, and that he had deposited $1,000 as security. In fact, Johnson did not pay rent, had not deposited any money, and had not expended any money for alterations, or for installing the fixtures, and the respondent so knew. Acting on the representations of the respondent and the others acting with him, Kornbluth in May, 1910, made a contract with the respondent for the purchase of the property for $85,000 to be paid thus: $2,500 on the making of the contract; $10,000 on the closing of the title; $30,000 mortgage to be assumed by Kornbluth; and purchase-money mortgage to be given by Kornbluth to respondent for $15,000, and the remainder to be paid by Kornbluth conveying to the respondent a piece of property in Brooklyn which was to be taken by the respondent at a value of $27,500.

The contract was carried out according to its terms, and later Kornbluth, still relying upon the representations made to him, purchased from the respondent for $14,000 the purchase-money mortgage which he had given the respondent. Later Kornbluth discovered the fraud, and sued the respondent and the others to recover the money he had lost, and the jury gave him a verdict of $10,000, the judgment under which was affirmed by the Appellate Division of the Supreme Court, First Department.

The defendant having answered, denying the allegations of misconduct, fraud, and conspiracy upon his part, the matter was referred to one of the official referees, who, after having taken a great amount of testimony, made his report, in which, after reviewing the testimony in detail, he concludes as follows:

"I do not think that the evidence in terms proves that Isaacs, Friedus, and Claman together made a conspiracy to defraud Kornbluth. I am, however, of the opinion that respondent and his associates, namely, Friedus, Claman, and the two Nails, were perfectly well aware that a tenant in possession, with a lease for 21 years which reserved a large rent, with a saloon fitted up on the premises apparently in successful operation, would greatly add to the selling value of the premises. Respondent, who, besides being a lawyer of skill and experience, was accustomed to deal in real estate, undoubtedly knew this perfectly well. No adequate explanation is offered by respondent of what raises a strong suspicion against him, viz., the inference that, Johnson being irresponsible and unable to pay the rent, some one furnished him, through Friedus and Claman, with funds to meet the rents payable to Kornbluth for several months. This inference may be drawn from the fact that, just as soon as Friedus and Claman dropped Johnson, the latter immediately was unable to do anything with the lease. While there is no evidence before me in terms of any conspiracy between respondent and the other persons mentioned, yet I am led to the conclusion that at least the following circumstances, as charged in the petition, have been established: That respondent, being the owner of the 146th street property, was desirous of selling it to Kornbluth (or, for that matter, to any person that might present himself) at an advanced price and in excess of its real value; that, knowing or at least having reason to know that Johnson was irresponsible, he leased the premises to him for 21 years at a rental beginning at $6,000 and rising to $7,500; that he at least consented

to, or was aware of, the representations made by Nail and Friedus that Johnson was a responsible person, had paid the rent regularly, had deposited money as security, and had spent large sums for alterations and the installation of fixtures, none of which was the fact; that upon these representations, and in view of the Johnson lease, Kornbluth purchased the property for $85,000, as above stated, a sum largely in excess of its value, and later purchased from the respondent for $14,000 the purchase-money mortgage of $15,-000, which he had given to the respondent; that Kornbluth was put to a loss by reason of these transactions, and later sued respondent and recovered judgment, which was affirmed by the Appellate Division. [The judgment of this court was affirmed by the Court of Appeals (111 N. E. 1090) after the making of the referee's report herein.]

"It is unnecessary to comment on the simplicity of Kornbluth in the transaction. He appears to have acted in the matter with a want of judgment, which the respondent urges brings him within the rule of caveat emptor, and that respondent is not responsible for his [Kornbluth's] bad bargain. This argument is not without some force. Yet the judgment of the Supreme Court in the suit which Kornbluth brought against Isaacs is to be considered in this action. The buyer must beware of his bargain, but he is not bound to foresee fraud and misrepresentation. If by fraud and misrepresentation he is seduced into a bad bargain, then the seller may be cast in damages, as was the respondent in this case. If the seller is a member of the bar, he is not only responsible in damages, but he may also, it would seem, be called upon to answer for his conduct to this court.

"It is not claimed that respondent was Kornbluth's attorney, or in any way acted for him or any other client in respect to the Johnson-Isaacs lease in his professional capacity. * * * Consequently no question of the relation of attorney and client is involved in this case. This court is therefore called upon to determine, in substance, whether dishonesty and fraud in personal transactions shall disqualify an attorney from continuing as a member of the profession. An attorney engaged in the practice of law should primarily reserve himself for his profession only. In this profession he is held to the highest standard of ethical and moral uprightness and fair dealing. There seems to be no good reason why a lawyer should be allowed to be honest as a lawyer and dishonest as a business man. If he desires to go into business, he must take the risk, if any is involved, and must see that his dealings as a business man are as upright as should be his dealings in his professional capacity. While it does not appear that respondent, in the matter of the sale of the 146th street property to Kornbluth, was under any professional obligation to the latter as an attorney and counselor at law, I cannot avoid the conclusion that, in his business dealings with Kornbluth concerning said sale, respondent was a party to, or at least was cognizant of, the frauds and misrepresentations which resulted in Kornbluth's loss and made use of them to accomplish his own purposes. I therefore find that the charges have been sustained to this extent."

The finding of the learned official referee is approved. We know from our own records that the conduct of the respondent in this transaction has already been passed upon by a jury adversely to him when the issue was directly presented, and the judgment entered upon that verdict has been affirmed by this court and the Court of Appeals. Even before the amendment of 1912 to section 88 of the Judiciary Law, this court said, in disciplining an attorney for his conduct in a real estate transaction:

"But attorneys who are guilty of fraud and deceit in their relations with others, even in their private transactions, should not be allowed to escape discipline, where the utmost good faith and highest degree of honesty is required from the members of the profession." Matter of Alexander, 137 App. Div. 770, 122 N. Y. Supp. 479.

The respondent is disbarred. All concur.