William MARCO, as administrator of all and singular, the goods, chattels and credits of Harry Marco, deceased, a stockholder of Blue Ridge Corporation, now Blue Ridge Mutual Fund, Inc., on behalf of himself and all other stockholders, similarly situated, and on behalf of Blue Ridge Corporation, now Blue Ridge Mutual Fund, Inc., and Ridge Realization Corporation as assignee of Blue Ridge Corporation, Plaintiff,

v.

John Foster DULLES, Arthur H. Dean and David R. Hawkins, as Executors of the Estate of Harrison Williams, Deceased, John Foster Dulles, Sidney J. Weinberg, Waddill Catchings, Walter E. Sachs, Arthur Sachs, Howard J. Sachs, Henry S. Bowers, Louis E. Kilmarx, Blue Ridge Corporation now Blue Ridge Mutual Fund, Inc. and Ridge Realization Corporation, Defendants.

United States District Court
S. D. New York.
Jan. 12, 1959.

624

David M. Palley, New York City, for plaintiff.

Sullivan & Cromwell, New York City, Milton Pollack, New York City, of counsel, for defendants, Walter E. Sachs, Waddill Catchings, Sidney J. Weinberg and David R. Hawkins, as Executor.

Fennelly, Eagan, Nager & Lage, New York City, Leo C. Fennelly, New York City, of counsel, for Ridge Realization Corporation.

James F. Donnelly, Orrin G. Judd, Frederick Rehberger, Edward R. Wardwell, New York City, special counsel, New York County Lawyers' Ass'n, amici curiæ.

Mark N. Donohue, New York City, Chairman Committee on Professional Ethics of The Association of Bar of City of New York. Maxwell Evarts, James E. Hughes, Philip C. Scott, George A. Spater, New York City, of counsel, amici curiæ.

FREDERICK van PELT BRYAN, District Judge.

This is a stockholders' derivative suit charging former directors of Blue Ridge Corporation and others alleged to be co-conspirators with wrongful diversion of corporate assets to their own profit and advantage and to the large damage of the corporation.

Plaintiff administrator claims to be the owner of 35 shares of Blue Ridge Corporation common stock. The individual defendants named in the complaint are former directors of the corporation, executors of a deceased former director, and other alleged participants in the transactions under attack. Named as nominal defendants entitled to the proceeds of the action are parties referred to as "Blue Ridge Corporation, now Blue Ridge Mutual Fund, Inc." and Ridge Realization Corporation. The latter is the alleged assignee of the rights of Blue Ridge Corporation to the claims which are the subject of the suit.

The firm of Sullivan & Cromwell has appeared in the suit as attorneys for the only individual defendants who have been served. These defendants are former directors of Blue Ridge Corporation and executors of the deceased former director. Defendant Ridge Realization Corporation has moved to disqualify Messrs. Sullivan & Cromwell from representing the individual defendants upon the ground that such representation violates Canons 6 and 37 of the Canons of Professional Ethics.[1] The motion is based on the theory that since Messrs. Sullivan & Cromwell were general counsel for Blue Ridge Corporation at the times when the transactions complained of took place they are barred from representing the accused former directors of that corporation in this stockholders' derivative action brought for its benefit.

Since the motion involved important questions of professional ethics the court requested The Association of the Bar of the City of New York and the New York County Lawyers' Association, through their Committees on Professional Ethics, to submit briefs as amicus curiæ. The court is grateful to both of these Associations, and to the gentlemen who acted as counsel for them, for their assistance.

Blue Ridge Corporation was an investment company organized in 1929 by Goldman Sachs Trading Corporation and Central States Electric Company, who became its controlling stockholders. Goldman Sachs and Central States Elec-

---

1. The Canons of Professional Ethics of the American Bar Association and the New York State Bar Association have been adopted by this court. General Rule 5(c).

tric were both clients of Messrs. Sullivan & Cromwell who handled the organization of Blue Ridge on behalf of these clients. The initial board of directors of Blue Ridge in 1929 consisted of two directors nominated by Goldman Sachs, two by Central States and a neutral director, then the senior partner of Sullivan & Cromwell. In 1930 a sixth member of the board was elected. All of the board's members, with the exception of the senior partner of Sullivan & Cromwell, were individual clients of that firm.

The transactions attacked in the present suit took place between 1929 and 1933. Sullivan & Cromwell represented both the corporation and the individual directors throughout the period of these transactions and in connection with them.

Shortly thereafter, however, control of Blue Ridge Corporation passed to a new group and a new board of directors was elected replacing all but one of the former directors. There were then other changes in control. In 1942 a petition for reorganization of Central States Electric Corporation under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., was filed and approved in the United States District Court for the Eastern District of Virginia. During the reorganization approximately two-thirds of the common stock of Blue Ridge Corporation was owned by Central States Electric through its trustees in reorganization and was one of its principal assets.

The present suit was commenced in this court in March 1958. However, the litigation involving the claims in suit has a long and somewhat involved history. The problems presented by the instant motion must be viewed against this background.

In 1936 Harry Marco, plaintiff's intestate, commenced a derivative stockholders' suit upon the same causes of action as are pleaded here against substantially the same defendants in the New York Supreme Court, Kings County. Blue Ridge Corporation was named as a nominal defendant. The complaint charged the former directors of Blue Ridge Corporation named as defendants with participating in an alleged conspiracy in fraud of that corporation to use it as a dumping ground for securities owned or underwritten by the directors or by the corporations whom they represented.

Messrs. Sullivan & Cromwell appeared for the former directors as individual defendants and represented them throughout this protracted litigation. The firm did not appear for or represent Blue Ridge Corporation. After obtaining extensions of time to answer or move, Sullivan & Cromwell early in 1937 wrote to the president of Blue Ridge advising that the interests of the defendants for whom it had appeared were not the same as the corporate interests, and that the corporation should employ special counsel to represent it in the action. The corporation did so and was represented throughout the state court action by successive independent counsel.

Apparently the action had not been vigorously pressed up to the time of the death of Marco, the original plaintiff, in 1942. An administratrix of his estate was appointed, and in 1944 the action was revived and continued by an ancillary administratrix and became active.

In the meantime the reorganization of Central States Electric under Chapter X commenced in 1942 had proceeded. In 1950 a plan of reorganization was duly promulgated and confirmed. Under the plan Blue Ridge Corporation assigned to the newly formed Ridge Realization Corporation various choses in action including the claims which were the subject of the Marco suit. Ridge Realization Corporation, in exchange therefor, issued all of its common stock to Blue Ridge Corporation, which in turn declared such stock as dividends to its stockholders. Each stockholder of Blue Ridge thus obtained as a dividend one share of the common stock of Ridge Realization Corporation for each share of Blue Ridge common stock held. Blue Ridge Corporation was then merged into another new corporation, Blue Ridge Mutual Fund, Inc., and its separate corporate existence was terminated.

 

**627**

The plan of reorganization of Central States was consummated in June 1951. Shortly thereafter Ridge Realization Corporation, as assignee from Blue Ridge Corporation of the claims which were the subject of the Marco suit, moved to be substituted for Blue Ridge Corporation as the nominal corporate party defendant in that suit. The motion for substitution was denied but Ridge Realization was permitted to be joined in the action as an additional nominal party defendant. Marco v. Sachs, 201 Misc. 928, 106 N.Y. S.2d 522.

In 1955, some four years after Ridge Realization had been joined, a motion was made by the nominal corporate defendants to disqualify Messrs. Sullivan & Cromwell from appearing for, representing, or aiding any of the individual defendants in that action. This motion was denied at Special Term without prejudice on the ground that it did not have jurisdiction to grant the motion. The order of denial was affirmed by the Appellate Division (1 A.D.2d 851, 149 N.Y.S.2d 486, 487) on the authority of Erie County Water Authority v. Western New York Water Co., 304 N.Y. 342, 107 N.E.2d 479, which held that only the Appellate Division of the New York Supreme Court had authority to deal with disqualification of counsel on grounds of professional ethics. Apparently no attempt was made by the corporate defendants to renew the motion in the Appellate Division.

In January of 1958 the Marco action was dismissed because of the failure of the plaintiff to appear for examination before trial.

In March of 1958 the present suit was commenced in this court by the plaintiff as substituted administrator for Harry Marco, predicated upon the same claims as had been the subject of the previous New York action. Jurisdiction in this court was founded on diversity of citizenship. It was alleged that this was a new suit for the same causes of action which had been previously sued on in the state court which was commenced within one year after termination of the prior action, in order to bring it within the provisions of Section 23 of the New York Civil Practice Act.

The instant motion followed.

Ridge Realization Corporation, claiming to be the successor in interest to Blue Ridge Corporation as its assignee of these choses in action, bases its motion to disqualify upon two grounds. First, it urges that Sullivan & Cromwell, by representing the former directors of Blue Ridge in this suit, represent conflicting interests in violation of the second paragraph of Canon 6 of the Canons of Professional Ethics. Secondly, it contends that such representation violates the last paragraph of Canon 6 and Canon 37, which deal with the obligation of counsel to preserve inviolate his client's secrets and confidences and forbid the subsequent retainer by others in matters adversely affecting any interest of client with respect to which confidence has been reposed.[2]

---

2. The second and third paragraphs of Canon 6, adopted in 1903, provide:

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

Canon 37, adopted in 1925, provides:

"It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure of use of these confidences, either for the private advantage * * * of the client, without his knowledge and consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of

I agree with the conclusions reached in the briefs submitted on behalf of The Association of the Bar and the New York County Lawyers' Association that no grounds for disqualification have been shown. However, the reasoning by which I reach that conclusion is somewhat different from that of counsel for the Associations.

█ I do not find that Sullivan & Cromwell represent conflicting interests in this suit within the meaning of the second paragraph of Canon 6. In this litigation that firm represents only individual defendants and none of the three corporations, Blue Ridge Corporation, Blue Ridge Mutual Fund, Inc., or Ridge Realization Corporation, who are directly or indirectly involved. Nor did Sullivan & Cromwell represent any of the corporate defendants in the litigation in the state court which preceded the present suit. In fact the firm declined to represent Blue Ridge Corporation in that action on the ground of possible conflict of interest with the directors for whom it appeared, and Blue Ridge was represented by independent counsel throughout.

There does not appear to be any inconsistency between the position which Sullivan & Cromwell took in connection with the transactions under attack and the position which it now takes upon behalf of the individual defendants. Having taken the professional position when representing the corporation and its directors that the transactions under attack were legal and proper, the firm takes the same position here. As attorneys for the former directors Sullivan & Cromwell seek to uphold the transactions entered into pursuant to their previous advice and their position is not hostile to or inconsistent with the position they previously took. They have no duty to Blue Ridge Corporation which requires them to oppose the interests of the defendants they now represent and to attempt to set aside the transactions which they advised were legal and proper, and indeed they could not properly do so.

The conclusion that Sullivan & Cromwell does not represent conflicting interests does not take into consideration the contention of the individual defendants that Blue Ridge Corporation is not a party in interest in this litigation at all because of the assignment of these choses in action to Ridge Realization Corporation and the merger of Blue Ridge Corporation with Blue Ridge Mutual Fund, Inc. I do not pass on that contention.

The question of whether the representation of the former directors by Sullivan & Cromwell violates the last paragraph of Canon 6 and Canon 37 is a more difficult one.

Messrs. Sullivan & Cromwell take the position that in view of the unique relationship between a corporation and its directors there can be no secrets or confidences reposed in them by the corporation which they are obligated not to divulge to the directors whom they thereafter may represent.

Their argument runs like this.—A corporation is an inanimate legal entity which can act only through and by its directors and officers. Any secrets or confidences reposed by the corporation in its general counsel are necessarily known to all of the directors since they are the only vehicles through which the corporation could have known of or expressed such confidences. Conversely, any confidences which the directors reposed in the general counsel to the corporation must have been fully known to the corporation since the directors constitute the voice and hearing of the corporation, and, indeed, its only voice and hearing. Thus there can be no secrets or confidences reposed in general counsel by the corporation which are not fully

his full duty to his former or to his new client.

"If a lawyer is accused by his client, he is not precluded from disclosing the truth in respect to the accusation. The announced intention of a client to commit a crime is not included within the confidences which he is bound to respect. He may properly make such disclosures as may be necessary to prevent the act or protect those against whom it is threatened."

known to its directors, nor any secrets or confidences reposed by the directors which are not fully known to the corporation. From this, it is argued that the representation of the directors in this suit could not possibly involve any breach of the professional obligation not to divulge any secrets or confidences of the corporation by a firm which acted as counsel for both the corporation and its directors because no such secrets or confidences exist.

 This argument does not seem to me to be valid. A corporation is a continuing entity. Boards of Directors come and go but the corporation persists. One board of directors may conceive the interests of a corporation to be quite different from a prior board. Nevertheless the professional obligation of former general counsel to the corporation persists. Its loyalty is not to the former directors alone but to the continuing corporate entity as well.

The corporation has its own files and records which it maintains continuously. While a board of directors in office has access to such files and records it by no means can be assumed that the directors know everything in the files and records of the corporation, or if they did that they retained such knowledge. There may well be secrets and confidences in the files of counsel which are in fact wholly unknown to the former directors.

██ It is unnecessary on a motion to disqualify for a former client to show that his former attorney is in the possession of specific secrets or confidences. As Judge Weinfeld said in T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., D.C.S.D.N.Y., 113 F.Supp. 265, 268, the rule is

" * * * that where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited."

Judge Weinfeld goes on to say (at pages 268–269):

" * * * The former client need show no more than that the matters embraced in the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client."

This was specifically approved by the Court of Appeals of this circuit in Consolidated Theatres, Inc. v. Warner Bros. Circuit Management Corp., 216 F.2d 920, 924, 52 A.L.R.2d 1231, where the court pointed out that the statement, while not a rule of law purporting to define the professional obligation, measured "the quantum of evidence required for proof of the obligation".

 Furthermore, the argument made by Messrs. Sullivan & Cromwell rests upon too narrow a concept of the professional relationship between lawyer and client. The words "confidence" and "confidences" as used in Canons 6 and 37 include more than specific matters of fact or information which come to the lawyer on a confidential basis. They include also intangibles arising from the very nature of the lawyer-client relationship which result from mutual discussion of the problems facing the client, consideration of the problems by counsel and the advice given thereon, the rationale of the solutions proposed and the legal techniques by which such solutions are arrived at.[3] It seems to me that this is why the courts have treated the rule formulated by Judge Weinfeld in the T. C. Theatre case as creating an "irrebuttable inference" that confidences material and relevant to the pending case were reposed in the attorney if the subject matter of the former representation is substantially related to the issues and subject matter of the current litigation. See Fleischer v. A. A. P., Inc., D.C.S.D. N.Y., 163 F.Supp. 548; Laskey Bros. of

---

**3.** See, also, Drinker, Legal Ethics, 104, 109, 115, which discusses the confusion that has surrounded the use of the word "confidence" in the canons and the occasional failure to comprehend that the word in context means "trust" as well as "secret".

W. Va., Inc. v. Warner Bros. Pictures, Inc., 2 Cir., 224 F.2d 824, 827, certiorari denied 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814; Fischer Studio, Inc. v. Loew's Incorporated, 2 Cir., 232 F.2d 199.[4]

■■ The disclosure or use of confidences is forbidden "even though there are other available sources of such information". Canon 37. And this is true "[a]lthough all of the information obtained by the attorney from his former client may be available to his present client * * *". Fleischer v. A. A. P., Inc., supra, 163 F.Supp. at page 551. Since here the very transactions which are the subject matter of the present litigation are the same transactions on which Messrs. Sullivan & Cromwell represented the corporation, the moving party has sufficiently established that there was "confidence" reposed by the corporation in Messrs. Sullivan & Cromwell which, in the absence of special and unusual circumstances, they would not be permitted to "divulge" or "use".

■ Furthermore, while the position of Messrs. Sullivan & Cromwell in this litigation is not adverse to the position which they previously took when representing the corporation, it is plainly adverse to the position which the corporation or its ' successor in interest takes now. Ridge Realization Corporation as the successor to and assignee of Blue Ridge Corporation with respect to these choses in action, now takes the position that these transactions should be set aside. The former directors insist that the transactions should stand. Thus Sullivan & Cromwell are presently representing the directors "in matters adversely affecting [the] interest of the client [Blue Ridge Corporation] with respect to which confidence has been reposed".

■ This is not to say that there may not be circumstances where the former

general counsel for a corporation may properly represent directors in a minority stockholders' suit. Cf. Otis & Co. v. Penn. R. Co., D.C.E.D.Pa., 57 F.Supp. 680. If the corporate management takes the position that the transactions under attack are valid and proper and should be upheld, such representation may not be "adverse to any interest" of the corporation and such representation may be proper. But a different result would follow where, through a change in management and policy, the corporation (the former client) takes the position that the transactions should be set aside.

Thus, I am not prepared to deny the motion to disqualify upon the ground that the professional relationship between the general counsel of a corporation and the corporation and its directors is such that no confidences could have been reposed in counsel by the corporation which would bar them from subsequently representing the directors. Nor am I prepared to hold that, in the absence of special circumstances, former general counsel is free to represent former directors adversely to the interests of the corporation where the corporation itself or its successor in interest has taken the position that transactions on which the former counsel represented the corporation should be set aside.

Yet these questions are not decisive of the instant motion. There are special and unusual circumstances here which impel the conclusion that Messrs. Sullivan & Cromwell are not disqualified from representing the former directors in the present suit and that the motion to disqualify should be denied.

The first of these circumstances arises from the nature of the accusations made in the complaint.

In this case the defendant directors are being accused of what is tantamount to fraud in connection with the transactions under attack. Sullivan & Cromwell plain-

---

4. In Fleischer Judge Herlands points out that the lodestar in these cases has been "the socially desirable objective of promoting and preserving the integrity of, and respect for, the bar". This principle, he notes, has been accorded the greatest weight "in accommodating the tug between inconsistent policies * * ".

ly were responsible for advising as to the legality of such transactions which were concededly entered into on their advice. It was their professional obligation, in so far as the facts were known to them, to vouch professionally for the legality of the transactions that were entered into. Such legality, in terms of dealings between the corporation and its directors, necessarily implied that the transactions were not tainted with fraud or impropriety.

The attempt to set aside these transactions upon the ground of fraud necessarily implies an accusation by the plaintiff not only against the directors who were clients of Messrs. Sullivan & Cromwell, but against Messrs. Sullivan & Cromwell themselves in their professional capacity as the lawyers in these transactions. Moreover, these accusations are direct as well as implied. The then senior partner of Sullivan & Cromwell is named as a defendant in the action and is alleged to have been a participant in the frauds charged. It is true that he is not expressly charged with fraud in his professional capacity. But his acts as a director cannot be separated from his acts as a member of the firm who were general counsel for the corporation. The line between the two is entirely too fine to permit the professional obligation as a lawyer and the fiduciary obligation as a director to be placed in convenient separate boxes.

█ It is well settled that an attorney engaged in the practice of the law is held to the same "highest standards of ethical and moral uprightness and fair dealing" when acting as a businessman or when acting as a lawyer and is subject to disciplinary action if he fails to maintain those standards in either capacity. See Matter of O'Neil, 228 App. Div. 129, 239 N.Y.S. 297; Matter of Isaacs, 172 App.Div. 181, 158 N.Y.S. 403; Matter of Dolphin, 240 N.Y. 89, 147 N.E. 538; Matter of Goldstein, 220 App.Div.

107, 220 N.Y.S. 473; Matter of Bullowa, 223 App.Div. 593, 229 N.Y.S. 145; Matter of Somerville, 183 App.Div. 445, 170 N.Y.S. 879.

█ Canon 37 expressly provides that "if a lawyer is accused by his client, he is not precluded from disclosing the truth in respect to the accusation". Here the firm of Sullivan & Cromwell is being accused of fraud by plaintiff purporting to derive his cause of action from its former client Blue Ridge Corporation. The firm is entitled to use all the knowledge at its disposal to protect itself against such accusations. The accusations relieve the defendant senior partner of Sullivan & Cromwell, and Sullivan & Cromwell themselves, from any duty not to disclose or to use such confidences, if any, as may have been reposed in them in the course of the transactions under attack.

Their present position, while it may be adverse to the present interests of the former client or its successor, is not adverse to or inconsistent with the advice which they previously gave to the corporation.[5] To defend themselves and their senior partner it is necessary and proper for Sullivan & Cromwell to do all they legitimately can to affirm the transactions upon which they are accused of fraud, and to supply all the ammunition which they have whether it came to them in confidence or not.

Thus, Sullivan & Cromwell have been relieved from their professional obligation against non-disclosure of confidences by the accusations made against them by the plaintiff which have for all practical purposes been adopted by Ridge Realization Corporation as successor to their former client, Blue Ridge. By the same token they are free from the obligation not to represent interests adversely affecting their former client in a matter in which confidence has been reposed.

█ While neither Canons 6 nor 37 specifically deal with representation of

---

163 F.Supp. 548, 552. See United States v. Standard Oil Co., D.C.S.D.N.Y., 136 F.Supp. 345.

5. Thus this case does not involve unprofessional conduct of attorneys who attack the validity of an instrument drawn

such interests under such circumstances, it seems to me that any bar to representation is removed when the lawyer is freed from the obligation to preserve the former client's secrets and confidences inviolate.[6] To hold otherwise would unnecessarily and unfairly restrict the directors and the firm of Sullivan & Cromwell itself from access to the legal talent most familiar with the facts of the case.

There is one further consideration.

Suit upon the claims which are the subject matter of the present litigation was first begun in the New York courts in 1936, some 22 years ago. As has been pointed out, the transactions under attack took place between 1929 and 1933.

Sullivan & Cromwell have consistently represented the individual defendants whom they represent here from the very commencement of the litigation on these claims. Yet it was not until 1955, some nineteen years after the state court litigation had been initiated, that the propriety of their represenation of the defendants for whom they appeared was first raised.

It might be said that, despite the appearance of independent counsel on behalf of Blue Ridge Corporation in the state court action, there may have been circumstances which would explain the failure to raise the question up to the time of the reorganization of Central States Electric Corporation which began in 1942. But subsequent to 1942, and during the reorganization proceedings in the district court, Central States, through its trustees in reorganization, had a two-thirds controlling interest in Blue Ridge Corporation. No one on behalf of that corporation raised any question in the state court litigation concerning the propriety of the representation by Sullivan & Cromwell of the individual

defendants until long after the reorganization proceedings were completed.

Ridge Realization Corporation became an additional nominal party defendant in the action in 1951. Four more years elapsed before (in 1955) the propriety of such representation was raised for the first time by the nominal corporate defendants when it was denied on technical grounds.

The present motion was made in 1958, some three years after the denial of the motion in the state court. Even if the additional delay be explainable upon the grounds of inability to overcome the technical difficulties which prevented a decision on the merits of the motion in the state court, the fact remains that the question was not raised at all for nineteen years after the action was commenced and for thirteen years after the commencement of the Central States Electric reorganization proceedings.

■■■ A motion to disqualify is of an equitable nature. A party making such a motion should do so with reasonable diligence and promptness after the facts have become known to it. There is no indication here that the facts were not at all times fully known to the moving party or to its predecessor in interest.

■■■ For purposes of this motion at least, the present suit must be viewed as a continuation of the prior state court litigation upon the same causes of action. Viewed in that light the inordinate and unexplained delay in moving to oust counsel who have consistently represented these defendants throughout the litigation casts serious doubts on the good·faith of the motion and shows a lack of diligence which militates strongly against granting it in the exercise of discretion.[7] To grant such relief at this

by them or seek to impugn transactions which they approved. Cf. Drinker, Legal Ethics, 113 (1953).

6. The preamble of the Canons of Professional Ethics states:
 "No code or set of rules can be framed, which will particularize all the duties of the lawyer in the varying phases of

litigation or in all the relations of professional life".

7. Of course in some circumstances even an express waiver by the former client may not as a matter of law bar a motion to disqualify since an ingredient of the policy applied by the court is to maintain the confidence of the public in

stage of the litigation would, in my view, be unfair both to the defendants and their counsel. This is true whether or not the moving party has been estopped by its conduct from making the motion.

For the foregoing reasons the motion to disqualify is in all respects denied.

So ordered.

the legal profession. See footnotes 4 and 5, at pages 630 and 631, 632 of 169 F. Supp., supra. Cf. Fleischer v. A. A. P., Inc., supra, p. 559; Consolidated Theatres, Inc. v. Warner Bros. Circuit Management Corp., supra; Packer v. Rapoport, Sup., 88 N.Y.S.2d 118; In re Pabst's Will, 278 App.Div. 649, 103 N.Y.S.2d 127. However, after 19 years' acquiescence the appearance of evil to the public eye can no longer be considered an operative principle, and thus the equities as between the parties loom larger as a determinative factor. This circuit has recognized that undue hardship to a litigant may result from an over-harsh rule of disqualification. Laskey Bros. of West Virginia, Inc. v. Warner Bros. Pictures, Inc., 2 Cir., 224 F.2d 824, 827, certiorari denied 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814.