[Civ. No. 31895.    Second Dist., Div. Five.    Aug. 18, 1967.]

EARL SCHEIB, INC., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ROBERT A. SMEE et al., Real Parties in Interest.

Buchalter, Nemer, Fields & Savitch and Irwin R. Buchalter for Petitioner.

No appearance for Respondent.

Miller & Jacobs and Gary S. Jacobs for Real Parties in Interest.

McCOY, J. pro tem.*—In an action now pending in the respondent court petitioner, Earl Scheib, Inc., sued to enjoin the defendants Smee, Acuff and Carcoa, Incorporated, from unfair competition and use of trade secrets. Summarily stated, plaintiff is a nationally-known, publicly-held company specializing in automobile painting, and claims to have expended considerable funds in accumulating a vast amount of difficult-to-obtain information relating to its business, and has evolved a superior method of analyzing this information, which is confidential and not readily available to its competitors. Petitioner here seeks a writ of mandate requiring the respondent court to vacate its order denying petitioner's motion for an order requiring the firm of Miller & Jacobs to withdraw as attorneys of record for defendants and to refrain from assisting defendants in the action, and to make an order granting that motion.

*Assigned by the Chairman of the Judicial Council.

Defendants Smee and Acuff were both employed by the plaintiff for over 10 years and in 1964 became vice-presidents. While so employed they had access to plaintiff's trade secrets and to other confidential information relating to its business. It is alleged in plaintiff's complaint that in 1966 Smee and Acuff conspired to form their own business in competition with plaintiff, and that after terminating their employment they formed defendant Carcoa Incorporated for that purpose. That corporation now operates several competing automobile paint shops in the Los Angeles metropolitan area.

Plaintiff's complaint was filed November 7, 1966. An order to show cause for a preliminary injunction was issued that day. On November 18, 1966, defendants appeared by the firm of Miller & Jacobs and filed their answer. The parties have agreed that the order to show cause for preliminary injunction will not be heard until this proceeding has been determined.

On March 24, 1967, plaintiff noticed a motion for an order requiring Miller and Jacobs to withdraw as attorneys for defendants and to refrain from assisting them in their defense. The motion was made on the ground that Mr. Jacobs, a member of that firm, who has been solely responsible for the defense so far, had previously been associated with Buchalter, Nemer, Fields & Savitch, attorneys for plaintiff, and while thus associated had "obtained confidential information relevant to" the subject matter of the action. Plaintiff's motion was supported by the declaration of Earl Scheib, president of the plaintiff corporation, alleging that Jacobs had access to confidential records relating to its business while employed by the Buchalter firm, and that plaintiff does not consent to Miller & Jacobs representing defendants It is also supported by the declaration of Mr. Buchalter who details the work done by Mr. Jacobs for plaintiff while Mr. Jacobs was associated with his firm from January 1960 to February 1, 1963.

In his opposing declaration Mr. Jacobs admits most of the allegations of Buchalter's declaration. He alleges that he first represented defendants in September 1966. As to the information obtained while working for Buchalter, he does not seriously question that it was confidential and related to plaintiff's business. However, he raises the question whether that information is relevant to the subject matter of the present action.

Plaintiff's motion was denied April 10, 1967. The minute

order reads: "Submitted, later: Motion denied on ground motion filed too late. No reason why motion could not have been made after MILLER and JACOBS first appearance in November 17, 1966, and the delay has been prejudicial to defendants in view of time spent on matter in the meantime." Thereafter the respondent court denied plaintiff's motion for reconsideration.

The question before us is whether the respondent court abused its discretion in denying the motion on the grounds stated in its minute order and in refusing to determine the motion on its merits. This appears to be a case of first impression in California.

The rules which underlie our decision have long been written in the books so that he who runs might read. "It is the duty of an attorney: . . . (e) To maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client." (Bus. & Prof. Code, § 6068.) "A member of the State Bar shall not accept employment adverse to a client or former client, without the consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client." (Rule 5, California Rules of Professional Conduct, 52 Cal.2d 897.)

In applying the rule stated in section 6068 it does not matter that the intention and motives of an attorney are honest. "The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent." (*Anderson* v. *Eaton*, 211 Cal. 113, 116 [293 P. 788] ; *Wutchumna Water Co.* v. *Bailey*, 216 Cal. 564, 571-573 [15 P 2d 505].) As the court said in the *Bailey* case (p. 573), it appears from the authorities there discussed "that an attorney is forbidden to do either of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any matter in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship." Both *Anderson* and *Bailey* are

cited in *Galbraith* v. *State Bar*, 218 Cal. 329, 332-333 [23 P.2d 291], where the court held that a reasonable construction of rule 5 of the Rules of Professional Conduct "suggests that the subsequent representation of another against a former client is forbidden not merely when the attorney *will* be called upon to use confidential information obtained in the course of the former employment, but in every case when, by reason of such subsequent employment he *may* be called upon to use such confidential information." (Italics by the court.)

The authorities were again reviewed in *Grove* v. *Grove Valve & Regulator Co.*, 213 Cal.App.2d 646 [29 Cal.Rptr. 150], on appeal from an order restraining certain attorneys from appearing or acting for the plaintiff in a pending action and from disclosing any confidential and privileged information acquired while they represented defendants. Affirming the order the court said that the generally recognized exceptions to the rules discussed in the *Bailey* and *Galbraith* cases are: "(1) where the relationship of attorney and client was never in fact created between the attorney and the complaining party (*Hicks* v. *Drew* (1897) 117 Cal. 305 [49 P. 189]; *Meehan* v. *Hopps* (1956) 144 Cal.App.2d 284 [301 P.2d 10]); (2) where the new employment is not inconsistent with the former employment (*Stockton Theatres, Inc.* v. *Palermo* (1953) 121 Cal.App.2d 616, 625-626 [264 P.2d 74]); (3) where the client expressly or impliedly consents to the adverse representation (*Lessing* v. *Gibbons* (1935) 6 Cal.App.2d 598, 605 [45 P.2d 258].)" (*Ibid.* pp. 652-653.)

In the case before us the court denied plaintiff's motion because it was "filed too late," and that the delay has been prejudicial to defendants. These grounds are not among the recognized exceptions to the general rule referred to in *Grove*, and so far as we can ascertain are not, and should not be valid reasons for denying such a motion (See generally, 1 Witkin, Cal. Procedure (1954) §§ 9-13, pp. 11-17.) As the court pointed out in *McClure* v. *Donovan*, 82 Cal.App.2d 664, 666 [186 P.2d 718]: "An attorney has a constant and perpetual rendezvous with ethics. He stands as a trustee for his client's interests—a most sacred and confidential relationship. It is elementary that a conflict of interest between a trustee and his beneficiary is never permissible. As a trustee cannot maintain an attitude adverse to his beneficiary, so an attorney may not represent claims inconsistent with those of his client or conflicting claims of two clients. He cannot serve two masters." The duty of the attorney to refrain from

representing conflicting interests continues after the termination of his employment by a former client. (Bus. & Prof. Code, § 6068.)

The situation here is comparable to that found in *Grove* v. *Grove Valve & Regulator Co., supra.* Here defendants appeared by Mr. Jacobs' firm and answered the complaint in November 1966, but the motion was not made until March 1967. In *Grove* the action was filed on October 31, 1960, and defendant's motion was not heard until May 4, 1961. There, as here, the affidavits filed in support of the motion showed that the moving party and its attorneys were well aware of the possible conflict in interest for several months before the motion was made, but no question was raised by the parties or by the court as to the timeliness of the motion.

In *Weidekind* v. *Tuolumne County Water Co.* (1887) 74 Cal. 386, 387 [19 P. 173, 5 Am.St.Rep. 445], the right of attorney for defendant to appear on its behalf was not raised until the time of trial. In that case defendant had judgment, and on appeal plaintiff assigned as error "that the court, against his objection, allowed an attorney and counselor at law who had formerly acted for plaintiff in this very case when it was previously tried to appear and act on behalf of the defendant on the trial of the cause last had." Reversing the judgment the court said (p. 389) : "The attorney himself boldly avowed his intention so to act; the court permitted him to do it, notwithstanding the plaintiff's objection. This we think was an error, and in the absence of any proof to the contrary, injury must be presumed to have resulted to the plaintiff, whereby he was prevented from having a fair trial of his case."[1] More recently, in *Anderson* v. *Eaton, supra,* 211 Cal 113, the question as to the attorney's dual representation was not raised until the attorney sued one of his clients for attorney's fees. In that case the court held (p. 118) that the contract to represent defendant was clearly "against public policy and void," and affirmed the judgment. *Hammett* v. *McIntyre,* 114 Cal.App.2d 148 [249 P.2d 885], is to the same effect.

---

[1] Quoting from an earlier decision, the court said (p. 389): "This court, speaking to such a question says: 'We are of opinion that the court in that case would have restrained him, even had he been unjustly discharged, and he was allowed, as contended, to be employed by the adverse party. The law secures the client the privilege of objecting at all times and forever to an attorney, solicitor, or counselor from disclosing information in a cause confidentially given while the relation exists. The client alone can release the attorney, solicitor or counsel from this obligation. The latter cannot discharge himself from the duty imposed on him by law.' (*In re Cowdery,* 69 Cal. 32, 50; 58 Am.Rep. 545.) "

It seems clear to us from our review of the cases discussed above that a client or former client of an attorney can raise the issue of representation of conflicting interests in any one of several ways at any time while the action is pending.

We are equally satisfied that in deciding whether an attorney should be permitted to continue to represent a client when the issue of a possible conflict is properly raised, the question of whether that client may have been prejudiced by reason of the delay by his former client in raising the issue, by reason of the time spent on the matter in the meantime or otherwise is not relevant. In such a case the question is whether the former client has been prejudiced. In the absence of any proof to the contrary, if it is established that the attorney is in fact undertaking to represent conflicting interests, injury to the former client must be presumed to have resulted by reason of such representation. (*Weidekind* v. *Tuolumne County Water Co.*, 74 Cal. 386 [19 P. 173, 5 Am.St. Rep. 445].)

Our attention has been called to *Consolidated Theatres* v. *Warner Bros. Circuit Management Corp.*, 216 F.2d 920 [52 A.L.R.2d 1231]; *Marco* v. *Dulles*, 169 F.Supp. 622, and *Milone* v. *English*, 306 F.2d 814 [113 App.D.C. 207], in which the courts considered similar motions to disqualify the attorneys for one of the parties. In our opinion the *Consolidated Theatres* case is relevant to the motion which was before the respondent court on its merits but has no bearing on the narrow questions before us.

It is true that in *Marco* v. *Dulles, supra,* (p 632), the court said that a motion to disqualify is of an equitable nature, and that "A party making such a motion should do so with reasonable diligence and promptness after the facts have become known to it. There is no indication here that the facts were not at all times fully known to the moving party or to its predecessor in interest." The motion there was denied. In that case, however, the court considered the fact that the same causes of action had been in litigation over a period of more than 20 years. "Viewed in that light the inordinate and unexplained delay in moving to oust counsel who have consistently represented these defendants throughout the litigation casts serious doubts on the good faith of the motion and shows a lack of diligence which militates strongly against granting it in the exercise of discretion." (*Ibid.*) No such situation is shown by the record before us.

In *Milone* v. *English, supra,* (p. 817), the motion to dis-

qualify was not made until four years after the litigation commenced, and some substantial time after the entry after the trial of a consent decree entered into as a settlement of the case alleged in the complaint. Before the entry of that decree no motion was filed or suggested with respect to the representation of the defendants, all of whom ''were then represented by the same counsel, with the record knowledge not only of plaintiffs and their counsel, but with the full knowledge of the trial judge who approved the Consent Decree.'' The court held on the authority of *Marco* v. *Dulles, supra,* that under the conditions disclosed by the record in that case it would be inequitable to grant the motion at that stage of the litigation.

It is readily apparent that both *Marco* v. *Dulles, supra,* 169 F.Supp. 622, or *Milone* v. *English, supra,* 306 F.2d 814, must be distinguished on the facts from the case before us. We are persuaded that neither of those cases supports the conclusion of the respondent court that the motion involved here was filed too late and that plaintiff's delay in making its motion has been prejudicial to defendants.

The record before us shows that the respondent court did not consider the motion before it on the merits. We hold only that it was an abuse of its discretion to deny the motion on the grounds stated in its minute order, and that the motion should have been considered on its merits. We do not hold that the motion should be either granted or denied, and nothing we have here said should be so construed.

Let a writ of mandate issue requiring the respondent court to vacate its minute order of April 10, 1967, denying plaintiff's motion for an order requiring defendants' attorneys to withdraw as attorneys of record and to refrain from assisting defendants in the pending action, and to hear and determine that motion on its merits.

Kaus, P. J., and Stephens, J., concurred.