[Civ. No. 26241. First Dist., Div. One. Apr. 10, 1970.]

BENNY KRAUS et al., Plaintiffs and Respondents, v.
RICHARD F. DAVIS et al., Defendants and Appellants.

## COUNSEL

FitzSimmons & Hawthorne, Anthony W. Hawthorne and Edward R. Fitz-Simmons for Defendants and Appellants.

Lempres & Seyranian, J. L. Henderson, Jr., Roderic Duncan and Leon G. Seyranian for Plaintiffs and Respondents.

## OPINION

**SIMS, J.**—Richard F. Davis, Rene Viviani, LeRoy Spaggiari, Edward R. FitzSimmons, Willow Park Public Golf Course, a corporation, and Willow Park Public Golf Course, a limited partnership, who are defendants in the above entitled action, have purported to appeal from an order granting the plaintiffs' motion to compel Davis, Viviani and Spaggiari to answer at depositions.[1] (Code Civ. Proc., § 2034.) The plaintiffs, in a motion to dismiss the appeal, properly pointed out that such an order is generally nonappealable. (See *Lund* v. *Superior Court* (1964) 61 Cal.2d 698, 709 [39 Cal.Rptr. 891, 394 P.2d 707]; *Munson* v. *Singer* (1965) 238 Cal.App.2d 697 [48 Cal.Rptr. 167]; and *O'Brien* v. *Superior Court* (1965) 233 Cal.App.2d 388, 391-392 [43 Cal.Rptr. 815].) At the hearing in the trial court on the motion to compel answers it was stipulated that the sole reason the named deponents refused to testify at the time fixed for the taking of their depositions was that one of the attorneys associated with the attorneys for the plaintiffs, who in fact himself had given the notices of the depositions and was present to conduct them, formerly occupied an attorney-client relationship with some of the defendants. In its written order granting the motion the trial court stated, "Although this matter comes before the court as a motion to compel answers at a deposition, it is in effect what could loosely be termed a motion to enjoin [the attorney] from representing the plaintiffs by reason of his conflict of interest as contended by the defendants [naming the three deponents]." At the oral hearing on the motion to dismiss the appeal (see *Taliaferro* v. *Crola* (1963) 217 Cal.App.2d 103, 104 [31 Cal.Rptr. 442]; and *Efron* v. *Kalmanovitz* (1960) 185 Cal.App.2d 149, 152 [8 Cal.Rptr. 107]), both sides stipulated that the motion to dismiss should be denied, and that the appeal should be heard on its merits as an appeal from the substance of the order which denied and overruled the defendants' objection to the participation of the designated attorney in the prosecution of plaintiffs' case. Since the matter

---

[1]The appeal purports to be from a minute order dated July 5, 1968, and from a written order dated July 3, 1968, and presented for signature and signed and filed July 22, 1968. The minute order does not expressly direct that a written order be prepared, signed and filed. (See Cal. Rules of Court, rule 2(b).) Nevertheless, in view of the question as to the appealability of the order, which is discussed in the text, the appeal from the minute order is dismissed, and the appellants' election to appeal from the written order is recognized as breathing life into what otherwise might be a stillborn appeal.

had been fully presented to the lower court and had been ruled on by it with reference to that theory, the stipulation was accepted.

■ An order refusing to restrain an attorney from participating in an action because of conflict of interest is reviewable by appeal as an order refusing to grant an injunction. (Code Civ. Proc., former § 963, subd. 2, now § 904.1, subd. (f); *Meehan* v. *Hopps* (1955) 45 Cal.2d 213, 215-216 [288 P.2d 267]. See also *Jacuzzi* v. *Jacuzzi Bros., Inc.* (1963) 218 Cal.App.2d 24 [32 Cal.Rptr. 188]; *Grove* v. *Grove Valve & Regulator Co.* (1963) 213 Cal.App.2d 646 [29 Cal.Rptr. 150]; *Meehan* v. *Hopps* (1956) 144 Cal.App.2d 284, 286, fn. 3 [301 P.2d 10]; and *DeLong* v. *Miller* (1955) 133 Cal.App.2d 175 [283 P.2d 762]. Cf. *Earl Scheib, Inc.* v. *Superior Court* (1967) 253 Cal.App.2d 703, 710 [61 Cal.Rptr. 386] [writ of mandate granted to order court to hear merits of motion which was erroneously denied on ground filed too late]; and *Petty* v. *Superior Court* (1953) 116 Cal.App.2d 20 [253 P.2d 28] [writ of review granted annulling order restraining attorney]; and *Elberta Oil Co.* v. *Superior Court* (1930) 108 Cal.App. 344 [291 P. 668] [writ of review issued and discharged].) Such an order is also appealable as a final order upon a collateral issue, because the denial of the motion leaves nothing further of a judicial nature for a final determination of the objecting party's rights regarding the opposing counsel. (Code Civ. Proc., former § 963, subd. 1, now § 904.1, subd. (a); *Meehan* v. *Hopps, supra*, 45 Cal.2d 213, 216-217; and see *Spencer* v. *Spencer* (1967) 252 Cal.App.2d 683, 688-691 [60 Cal.Rptr. 747].) So here the ruling of the court effectively denied the deponent-defendants' efforts to prevent the designated attorney from participating in the case, and established his right to do so on behalf of the plaintiffs.

For the reasons set forth below it is concluded that the trial court's ruling that the attorney was not disqualified to represent the plaintiffs is sustained by the evidence, and that the order must be affirmed.

## The Record

On June 22, 1967, a complaint was filed on behalf of plaintiffs by the law firms of Brown, Hagler, Henderson and Duncan, and Lempres & Seyranian. A first amended complaint was filed by the same attorneys on September 18, 1967. The named defendants consist of the Willow Park Public Golf Course, a corporation and others, of whom, the defendants Spaggiari, Viviani and Davis, whose testimony by deposition was sought, and the defendant FitzSimmons, an attorney who with Viviani and Davis was a general partner in the Willow Park Public Golf Course, a limited partnership, are directly involved in these proceedings. The action arises from controversies concerning the ownership and operation of a public golf

course constructed on leased land during the years 1965 and 1966. The plaintiffs, allegedly investors in the project, seek damages for breach of contract, fraud, conversion, and violation of the California Corporate Securities Law, and further request that a constructive trust be imposed upon the property.[2]

On April 17, 1968, plaintiffs filed notices of the taking of the depositions of defendants Spaggiari, Viviani and Davis. Subpoenas duces tecum were issued with respect to the proposed deposition upon the declarations of Roderic Duncan, one of the attorneys for plaintiffs. Davis and Viviani appeared at the time set for the depositions, but refused to answer any questions on the ground of a conflict of interest which allegedly arose because of Duncan's prior association in the practice of law with Fitz-Simmons, their codefendant, who at all times had been their attorney in connection with affairs involving the golf course. Spaggiari failed to appear for the same reason. On the same day Viviani and Davis wrote Duncan formally demanding that he remove himself from further participation in the litigation. The motion to compel answers ensued. It was supported by the affidavits of Duncan, of one Thelton E. Henderson, a former associate in FitzSimmons' law office (not, however, to be confused with J. L. Henderson, Jr., with whom Duncan was associated at the time the action was filed), and of Ray G. Montalvo, another defendant and cross-complainant who had been one of the incorporators and the first president of the corporation. FitzSimmons filed a declaration in opposition, and at the hearing on the motion FitzSimmons and Duncan appeared as witnesses.

## The Evidence

The declaration of Montalvo as one of the original incorporators of the corporation indicates that FitzSimmons was the attorney for the corporation during most of the time Montalvo was associated with it. It is acknowledged that prior to March 1966, FitzSimmons was participating in hearings before the Corporation Commissioner in connection with an application he had filed on behalf of the corporation for a permit to issue securities; that this application was denied by a written decision; and that at some time prior thereto an article appeared in a local newspaper that the corporation was under investigation by a legislative committee.

According to FitzSimmons the corporation had been incorporated and had secured a lease of the property for a golf course before he was consulted. He was drawn into the picture because Davis, his client, had become

---

[2]The appealing defendants have filed their answer to the amended complaint, and by cross-complaint seek indemnity against other defendants in the event any liability is imposed on them. Other defendants, not parties to these proceedings, have also answered and filed cross-complaints.

involved with the promoter group. He undertook to get a permit to issue securities in return for a 5 percent stock interest. After the permit was rejected following a series of hearings, he formed a limited partnership and offered the investors limited partnership interests. Three-quarters of the investors accepted. FitzSimmons' declaration and testimony that Duncan participated in this work was unequivocably denied by Duncan.

In 1964 Duncan joined the law firm, then known by the name of Fitz-Simmons and a former associate, as an attorney. Thereafter, and until about October 15, 1966, he was associated in some sort of relationship with that law firm. During all of that period Duncan's name was on the firm letterhead and on the door, along with the names of five other lawyers. It appears that in addition to the two principals, Duncan and Henderson were considered as affiliated lawyers, and the other two were employees of the principal attorneys. There was never any formal association or partnership. FitzSimmons paid the overhead expenses such as secretaries' salaries, library expense, telephone and rent, with the exception of possibly 5 percent contributed by the younger lawyers from their personal business.

According to Duncan he received three regular monthly paychecks. Thereafter, he served as an administrative assistant to FitzSimmons' associate, who was a member of the Legislature, and was compensated on a case-by-case basis for work he did for FitzSimmons or the other associate. Duncan's practice progressed from when he was completely working on the cases of FitzSimmons and his associate, to where he was devoting 75 percent of his time to his own business. He testified that the cases he received from FitzSimmons were kept in files in his own office apart from the central office files, and that he generally handled the disposition of those cases.

Duncan acknowledged that he had seen Davis at the office of the firm, that he had seen a copy of the Corporation Commissioner's decision, and that he had seen a copy of a newspaper article concerning the golf course enterprise. He renounced all intimations that he had otherwise participated in or gained any knowledge of the affairs of the golf course enterprise while associated with FitzSimmons.

*Discussion*

The principles upon which the appealing defendants rely are set forth in *Galbraith* v. *State Bar* (1933) 218 Cal. 329 [23 P.2d 291], as follows: "Rule 5 of the Rules of Professional Conduct (213 Cal. cxiv) reads as follows: 'A member of The State Bar shall not accept employment adverse to a client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his

employment by such client or former client.' [For current text see 52 Cal.2d at p. 897.] Canon 37 of the Canons of Professional Ethics of the American Bar Association (56 A.B.A. Rep. (1931) p. 803) is to the same effect.

"A reasonable construction of this rule suggests that the subsequent representation of another against a former client is forbidden not merely when the attorney *will* be called upon to use confidential information obtained in the course of the former employment, but in every case when, by reason of such subsequent employment, he *may* be called upon to use such confidential information. In subdivision 5 of section 282 of the Code of Civil Procedure it is declared to be the duty of an attorney 'to maintain inviolate the confidence, and at every peril to himself, to preserve the secrets of his client'. [Now found in Bus. & Prof. Code, § 6068, subd. (e).] (See, also, *Anderson* v. *Eaton,* 211 Cal. 113 . . .) In *Watchumna Water Co.* v. *Bailey,* 216 Cal. 564 . . ., it is declared that 'an attorney is forbidden to do either of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any matter in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.' " (218 Cal. at pp. 332-333. See also, in addition to precedents cited in above, *Weidekind* v. *Tuolumne County Water Co.* (1887) 74 Cal. 386, 388-389 [19 P. 173]; *In re Cowdery* (1886) 69 Cal. 32, 35 [10 P. 47]; *Earl Scheib, Inc.* v. *Superior Court, supra,* 253 Cal. App.2d 703, 706-707; *Jacuzzi* v. *Jacuzzi Bros., Inc., supra,* 218 Cal. App.2d 24, 28; *Grove* v. *Grove Valve & Regulator Co., supra,* 213 Cal. App.2d 646, 651-652; *Meehan* v. *Hopps, supra,* 144 Cal.App.2d 284, 286-287; and *DeLong* v. *Miller, supra,* 133 Cal.App.2d 175, 178.)

█ "In the absence of any proof to the contrary, if it is established that the attorney is in fact undertaking to represent conflicting interests, injury to the former client must be presumed to have resulted by reason of such representation. (*Weidekind* v. *Tuolumne County Water Co.,* 74 Cal. 386 . . .)" (*Earl Scheib, Inc.* v. *Superior Court, supra,* 253 Cal.App.2d at p. 709.)

Where the relationship of attorney and client was never in fact created between the attorney and the complaining party there is no disqualification for acting for another against that party. (*Hicks* v. *Drew* (1897) 117 Cal. 305, 307-308 [49 P. 189]; *Jacuzzi* v. *Jacuzzi Bros., Inc., supra,* 218 Cal. App.2d 24, 29-30; *Meehan* v. *Hopps, supra,* 144 Cal.App.2d 284, 287-290; *Towns* v. *Towns* (1939) 36 Cal.App.2d 88, 91 [96 P.2d 971]; and see *Earl Scheib, Inc.* v. *Superior Court, supra,* at p. 707; and *Grove* v. *Grove Valve & Regulator Co., supra,* 213 Cal.App.2d 646, 652.)

■ The determination of the existence of an attorney-client relationship between Duncan and the complaining parties is one of law. "However, where there is a conflict in the evidence the factual basis for the determination must first be determined, and it is for the trial court to evaluate the evidence. [Citation.]" (*Meehan* v. *Hopps, supra,* 144 Cal.App.2d at p. 287. See also *Hicks* v. *Drew, supra,* 117 Cal. 305, 307; *Jacuzzi* v. *Jacuzzi Bros., Inc., supra,* 218 Cal.App.2d 24, 27-28; *Grove* v. *Grove Valve & Regulator Co., supra,* 213 Cal.App.2d 646, 653-654; and *DeLong* v. *Miller, supra,* 133 Cal.App.2d 175, 178. Cf. *Weidekind* v. *Tuolumne County Water Co., supra,* 74 Cal. 386, 388-399.)

By reference to the law of privileged communications, the appealing defendants indicate that the principle prohibiting employment adverse to a client or former client should apply to those who acquired confidential information while employed by the complaining party's attorney or former attorney. (See Code Civ. Proc., former § 1881, subd. 2; Evid. Code, §§ 950-954; and *City & County of San Francisco* v. *Superior Court* (1951) 37 Cal.2d 227, 234-237 [231 P.2d 26, 25 A.L.R.2d 1418].) The Code of Civil Procedure, formerly referred to "an attorney's secretary, stenographer, or clerk" (§ 1881, subd. 2), and the Evidence Code refers to "those who are present to further the interest of the client in the consultation" and "those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." (§ 952.) It may be assumed for the purposes of this case that Duncan would be barred from participating in this case if he either was a partner or otherwise associated as an attorney in the representation of the complaining parties, or if, as an independent associate, he in fact acquired confidential information concerning the affairs of those parties.

■ The evidence, however, supports findings that Duncan was never an attorney for any of the complaining parties, and that he never acquired, in any capacity, any knowledge of the confidential affairs of the corporation, the limited partnership, nor the parties interested in those business entities. The records of the Corporation Commissioner are a matter of public information, and no other information has been alluded to by the complaining parties.

The foregoing makes it unnecessary to consider plaintiffs' further contention that the record demonstrates that the complaining parties through FitzSimmons, individually for himself and as attorney for the others, waived any objection to Duncan's participation in the case. ■ A client or former client may consent to an attorney's acceptance of employment which may be adverse to the client's interest. (Rules of Professional Conduct, rule 5 [52 Cal.2d at p. 897]; and see *Earl Scheib, Inc.* v. *Superior Court,*

*supra,* 253 Cal.App.2d 703, 707; *Grove* v. *Grove Valve & Regulator Co., supra,* 213 Cal.2d 646, 652-653; and *Lessing* v. *Gibbons* (1935) 6 Cal. App.2d 598, 605-606 [45 P.2d 258].) Nevertheless, a waiver will not generally be presumed from mere delay in raising the objection *(Earl Scheib, Inc.* v. *Superior Court, supra,* 253 Cal.App.2d at pp. 707-709; but cf. *Gottwals* v. *Rencher* (1940) 60 Nev. 35, 57-60 [92 P.2d 1000, 98 P.2d 481, 486-487]); nor is the question of possible prejudice to the new client a relevant consideration if there is prejudice to the former client *(id.,* at p. 709).

The problem raised by this case was presented to Lord Chancellor Eldon, almost 150 years ago, in *Bricheno* v. *Thorp* (1821) Jacob 300 [37 Eng. Reprint 864]. He observed, "A gentleman going into business for himself must not carry into it the secrets of his master; but, on the other hand, I think it my duty to take care that he may not be prevented from engaging in any business that he may fairly and honourably take." *(Id.* 302 *[id.* 865], quoted in *In re Cowdery, supra,* 69 Cal. at p. 44.) The trial court determined that Duncan could fairly and honorably undertake the representation of plaintiffs, and this court is bound by that finding which is supported by substantial evidence. Nevertheless, any gentleman going into business for himself should be cautioned that Justice, like Caesar's wife, must be above suspicion. She is better served not simply by strict adherence to her canons, but also by the avoidance of any conduct which may be interpreted as reflecting on the integrity of the administration of justice.

The order is affirmed.

Molinari, P. J., and Elkington, J., concurred.