[Civ. No. 20474.   First Dist., Div. Two.   Mar. 7, 1963.]

MARVIN H. GROVE, Plaintiff and Appellant, v. GROVE VALVE AND REGULATOR COMPANY et al., Defendants and Respondents.

648

Fitzgerald, Abbott & Beardsley for Plaintiff and Appellant.

McCutchen, Doyle, Brown & Enersen, Morris M. Doyle, John N. Hauser and Francis M. Small, Jr., for Defendants and Respondents.

AGEE, J.—This is an appeal from an order restraining and enjoining Flehr and Swain, a law firm, and Paul D. Flehr, one of its members, from appearing or acting herein as attorneys for appellant in this action and from disclosing any *confidential and privileged* information acquired during the period from October 1956, to August 1, 1960, when Flehr and his firm served as the attorneys for respondents. The order is collateral to the merits of the case and this opinion is confined to the propriety of said order.

Appellant, Marvin H. Grove, served as president of respondent Grove Company from October 16, 1956, through December 31, 1957. As of January 1, 1958, until his resignation in August 1960, he was the president and a director of Grove Company, and also a director and member of the executive committee of respondent Walworth Company.

This action was commenced by appellant on October 31, 1960, and seeks injunctive relief and damages on account

of the manufacture and sale by respondent Grove Company of two products, referred to as "G-5," a gate valve, and "Valv-Pak," an assembly of gate valves used in oil well installations. Grove Company is a wholly owned subsidiary of Walworth.

The original and first amended complaints both were before the trial court when the order was made. The gist of appellant's allegations is that, while he was employed by respondents, he made certain inventions which have been incorporated in the G-5 and Valv-Pak products; that he is entitled to ownership of these inventions; that respondents should be enjoined from the use of said inventions in the manufacturing of said products; and that he is entitled to damages on account of the sales of such products by respondents.

The appellant's pleadings disclose that appellant is claiming that respondents made certain admissions that the inventions were appellant's property; that appellant made the inventions in reliance on alleged promises by respondents that they would be appellant's property; and that the inventions were of a kind and nature that were to be appellant's rather than respondents' property under the terms of an employment contract between appellant and respondents.

Thus, appellant's pleadings raise questions concerning the origin and development of G-5 and Valv-Pak, the source and nature of the inventions incorporated in the products, and the course of dealings between appellant and his employers, the respondents herein.

Among the attorneys appearing for appellant on both the original and first amended complaints were said Paul D. Flehr and his firm. The order appealed from is supported by six affidavits, a summary of which follows.

(1) The affidavit of John W. Collins, now the president of respondent Grove Company, states that his company is engaged in the business of designing, developing, inventing, manufacturing, and selling valves, regulators, and related products; that since at least 1953 and up to August 1, 1960, Flehr and his law firm continuously served as the patent attorneys for respondent Grove Company, devoted substantial time to this representation, were paid substantial fees therefor, had access to company files, data and records, performed services for the company relating to the G-5 and Valv-Pak products, including the filing of patent applications

covering features of those products, and had access to company data and information concerning the products; for the years 1957, 1958, 1959, and up to August 1, 1960, Grove Company paid Flehr and his firm, for legal services, the sums of $21,-624.57, $26,323.79, $30,393.01, and $26,627.18, respectively.

(2) The affidavit of Austin Bryant, vice president engineering, of respondent Grove Company, describes the development of the G-5 and Valv-Pak products, which commenced in 1958, relates the facts as to some of the services performed by Flehr as the company's patent attorney in connection with the two products, and gives in detail Flehr's access to company files, data, and information relating to G-5 and Valv-Pak, and other new products under development.

(3) The affidavit of William A. Simon, Jr., general counsel for respondents, states that Flehr and his law firm, in addition to representing Grove Company, also served as patent attorneys for Walworth during a considerable part of the time period involved in the present suit.

(4) The supplemental affidavit of John W. Collins, which refers to statements rendered to Grove Company by Flehr and his firm during the period January 1958 through October 1960 states that many of the items therein contained were for legal services relating to the G-5 and Valv-Pak products; that, for example, the statement of May 1, 1959, contains five separate charges, totaling $1,475, for legal services relating to early versions of these two products; that from April 1, 1959, through August 1960 said law firm made specific charges to the Grove Company totaling in excess of $5,500 for legal services relating to various versions and features of said products; that, in addition to the services reflected in said statements, Grove Company paid Flehr $14,300 for the year 1958, $15,000 for the year 1959, and $8,750 for the year 1960; that many charges were paid by Grove Company to said law firm during the period from 1958 through 1960 for legal services relating to the G-5 and Valv-Pak products but which were not specifically identified in the statements as such.

(5) The second supplemental affidavit of John W. Collins states that Grove Company never consented or agreed that Flehr might represent the appellant personally in any matters conflicting with Flehr's representation of respondent

Grove Company and that Flehr never requested any such consent or agreement.

(6) The affidavit of W. Frederick Spence, president and chairman of the board of directors of respondent Walworth, states that from 1956 to August 1, 1960, Flehr and his law firm continuously were employed as the only patent attorneys for respondent Grove Company; that he neither understood nor was he advised that Flehr was or might be acting in a manner conflicting with his continuing representation of respondents; that Flehr never raised the question of a conflict, never sought the consent or agreement of respondents that he be permitted to represent appellant in any manner, and respondents never consented or agreed that Flehr be permitted to represent appellant in any respect; that Flehr acted as patent attorney for respondents in numerous matters; that on May 31, 1959, Flehr laid down a comprehensive patent policy for respondents under which all company patent applications had to be cleared with Flehr as the company attorney; that when Flehr consulted with Grove Company employees as to G-5 and Valv-Pak, had access to company files, plans and data, and prepared patent applications covering the features of these products, he was acting as company attorney; that Flehr never said he was acting in any other capacity.

Flehr executed an original affidavit and three supplemental affidavits in opposition to the motion for the order. His position, as indicated therein, will be discussed hereafter. There were no other affidavits offered in opposition.

The general rule applicable to the issue presented on this appeal is well stated in *Wutchumna Water Co.* v. *Bailey* (1932) 216 Cal. 564 [15 P.2d 505], at page 573: " 'The fact that an attorney has once acted in a professional capacity for a person does not preclude him from thereafter accepting a retainer to act adversely to his former client in a matter which has *no reference to his previous employment,* nor is he precluded from acting for another in the same general matter where his employment is *not adverse to his former client.* The test of inconsistency is not whether the attorney has ever appeared for the party against whom he now proposes to appear, but it is whether his accepting the new retainer will require him, in forwarding the interests of his new client, *to do anything which will injuriously affect his former client in any matter in which he formerly repre-*

*sented him,* and also whether he will be called upon, in his new relation, *to use against his former client any knowledge or information acquired through their former connection.'* " (Italics ours.)

█ This rule is codified in the statutes of this state (Bus. & Prof. Code, § 6068, subd. (e) and § 6076). It has been cited as determinative (see *Galbraith* v. *State Bar* (1933) 218 Cal. 329, 333 [23 P.2d 291]; *Sheffield* v. *State Bar* (1943) 22 Cal.2d 627, 630-631 [140 P.2d 376]), and it is one of the basic rules of ethics which are generally considered to be consistent with professional responsibility in the practice of law (Drinker, Legal Ethics, (Columbia University Press 1953) p. 131 et seq.).

. It is stated in *Galbraith, supra,* at pages 332-333, that: "A reasonable construction of this rule suggests that the subsequent representation of another against a former client is forbidden not merely when the attorney *will* be called upon to use confidential information obtained in the course of the former employment, but in every case when, by reason of such subsequent employment, he *may* be called upon to use such confidential information."

█ Where the rule above stated is in danger of being violated, or has been violated, the courts recognize various ways by which the issue can be raised and the situation rectified. (1 Witkin, California Procedure, Attorneys, § 9, pp 11-12.) One of these methods is by a motion before the court to enjoin the adverse representation (*Wutchumna Water Co.* v. *Bailey, supra; Meehan* v. *Hopps* (1955) 45 Cal.2d 213 [288 P.2d 267]). Respondents' manner of proceeding herein is therefore correct. ·

On the other hand, there are some recognized exceptions to the rule as above formulated. Appellant attempts to bring the instant case under one or more of these exceptions. · ·

█ The generally recognized exceptions are: (1) where the relationship of attorney and client was never in fact created between the attorney and the complaining party (*Hicks* v. *Drew* (1897) 117 Cal. 305 [49 P. 189]; *Meehan* v. *Hopps* (1956) 144 Cal.App.2d 284 [301 P.2d 10]); (2) where the new employment is not inconsistent with the former employment (*Stockton Theatres Inc.* v. *Palermo* (1953) 121 Cal.App.2d 616, 625-626 [264 P.2d 74]); (3) where the client expressly or impliedly consents to the

adverse representation (*Lessing* v. *Gibbons* (1935) 6 Cal. App.2d 598, 605 [45 P.2d 258]).

If appellant cannot bring himself within one of these exceptions, the general rule will be controlling if applicable to the facts of the instant case. It is undisputed that the attorney-client relationship in question existed throughout the period covered by the order, so that the first exception cannot apply.

Secondly, there can be no reasonable doubt that Flehr's present employment as attorney for appellant in this action is adverse to the interests of his former clients, since appellant is suing them over matters which are related to and which Flehr became conversant with during the period in which he represented respondents as their attorney.

Finally, despite appellant's argument, the record does not support the theory that respondents consented, either expressly or impliedly, to Flehr's representation of appellant in the instant action. Appellant's laborious argument proceeds on the theory that Flehr simultaneously represented both the Grove Company, as a patent attorney, and appellant himself, as his personal patent attorney, during the years that appellant headed Grove Company. However, representation of this nature does not necessarily imply that Flehr was the common attorney of both parties; nor does it imply that a conflict of interest existed at that time. There is certainly no basis for the contention that respondents consented that Flehr might bring suit against them on behalf of appellant, asserting that appellant and not respondents owned the inventions on which Flehr had worked as respondents' counsel.

Actually, the record indicates that the conflict of interest problem arose only when appellant had the falling out with respondents and employed Flehr to file suit for him against respondents. This was *after* the period of which appellant speaks. Also, simultaneous representation of two such clients is not at all improper if their interests are not inconsistent as against one another, and if confidential information received by the attorney from one client is not subsequently used against him while the attorney is acting on behalf of the other client (*Wutchumna Water Co.* v. *Bailey, supra*).

█ The trial court found that the facts presented to it brought Flehr and his law firm under the general rule and refused to apply any exception thereto. Its order should

not be reversed if we find, as we do, that it is supported by substantial evidence. (*Meehan* v. *Hopps* (1956) 144 Cal. App.2d 284, 287 [301 P.2d 10]; *Cottle* v. *Gibbon* (1962) 200 Cal.App.2d 1, 4 [19 Cal.Rptr. 82].)

*Other Issues.* Appellant raises six other points, none of which has any merit. We will list these in the order made, stating appellant's contention in the first sentence.

1. The order should not have provided that Flehr, his firm, partners and associates "are hereby *pending* the *final disposition of this case* enjoined and restrained" from acting as appellant's attorneys in this action or disclosing any confidential or privileged knowledge or information "concerning matters or transactions the subject of plaintiff's complaint or first amended complaint." (Italics ours.)

Appellant complains that "the order manifests an unwillingness to entertain the possibility of subsequent modification or dissolution." No reason is advanced why, in this particular situation, there should be any occasion for such a modification or dissolution. Moreover, the court has inherent power to modify such a preventive injunction order at any time, upon a proper showing. (*Sontag Chain Stores Co.* v. *Superior Court,* 18 Cal.2d 92, 94 [113 P.2d 689]; *Union Interchange, Inc.* v. *Savage,* 52 Cal.2d 601, 604 [342 P.2d 249].)

2. Appellant, in his opening brief, states that the trial court "abused its discretion in basing such an order *solely on affidavits.*" However, in his closing brief, appellant admits that "[u]nder section 2009 of the California Code of Civil Procedure, a trial court unquestionably has such power," and that his contention "is in point only if a finding on the ultimate issue of fact in this case [i.e., ownership of the inventions involved herein] is necessarily to be implied in support of the order . . ."

Respondents dispel this fear, stating that it is a "well-known rule that affidavits may not be used to prove the merits of a lawsuit, as distinguished from matters collateral to or ancillary to the action. . . . [I]n the present case the question of whether Flehr and his law firm should be allowed to represent appellant clearly is a collateral issue. *Meehan* v. *Hopps,* 45 Cal.2d 213, 216 [288 P.2d 267] (1955)."

3. Respondents' motion implies an attack on the propriety of Flehr's conduct and he should be allowed to defend himself against this attack. However, the record before us does not disclose any such attack and respondents expressly dis-

claim any intention to make one. Appellant quotes portions of the respondents' answer to the first amended complaint. This answer was filed after the hearing of the motion and is therefore not a part of the record before us. Moreover, said portions are not an attack upon Flehr but rather an attack upon appellant.

The rule contended for by appellant is stated in Witkin, California Evidence, page 469: "If, . . . in an action between the client and a third person, the attorney's good faith, integrity or authority are questioned, the attorney may meet this issue with *testimony* as to communications between himself and the client." (Italics ours.)

It is significant that *all* of Flehr's affidavits were accepted at the hearing of the motion. If the motion is an attack upon Flehr, as claimed by appellant, no objection was made as to any testimony that Flehr proffered with relation thereto.

Where said exception to the attorney-client privilege applies, it merely precludes the exercise of the privilege in regard to certain proffered testimony. There is no authority for the proposition that it also permits an attorney to represent a client under the theory of counteracting aspersions on his conduct.

Respondents cite and rely on *Arden* v. *State Bar,* 52 Cal.2d 310 [341 P.2d 6]. There Arden had acted as the common attorney for both the natural mother and the adoptive parents in an adoption proceeding. He secured the mother's consent to the adoption. She later petitioned to have her consent set aside. In this petition, she alleged charges against Arden which the Supreme Court characterized as "most serious." In opposing the mother's petition, the adoptive parents were represented by other counsel, but Arden cooperated with and assisted this counsel. The Supreme Court refused to discipline Arden on this ground. This type of situation does not exist here. Furthermore, the *Arden* case is not authority for the proposition that Arden could have acted as the attorney for the adoptive parents in opposing the mother's petition. His participation was limited to defending himself against the "most serious" charges made against him.

4. The trial court disregarded the allegations of the original and first amended complaints. This is not so. The appellant's pleadings had to be considered in order to deter-

mine the nature of the case and whether the affidavits in support of the motion tied in with the situation disclosed by such pleadings. There is absolutely no support in the record for any claim that the trial court was not fully aware of the pleadings and did not weigh and consider them along with the affidavits.

The appellant goes further and contends that any allegations in his verified first amended complaint which are not denied in respondents' affidavits must be taken as being true. However, the motion before the lower court was not for the purpose of determining the merits of any issue involved in the case but was limited to a determination of whether Flehr and his associates were disqualified from representing appellant in the action and disclosing to him information which is confidential and privileged as to respondents. A consideration of the verified pleadings of appellant also is so limited and any conflicts therein with the affidavits filed by respondents are for the trial court to resolve.

5. The trial court was unaware of and could not have considered the minutes of the meeting of the Walworth board of directors, held on July 1, 1959, because these minutes were attached as an exhibit to the first of the four affidavits executed by Flehr and this affidavit is missing from the county clerk's file. The record does not support the conclusion reached by appellant.

The motion for the order was heard on May 4, 1961. The affidavit in question was filed in open court on that date by appellant's counsel. This statement in respondent's brief is not denied by appellant. The affidavit and attached exhibit are missing from the county clerk's file. Appellant's request that a copy thereof be included in the transcript on appeal was agreed to by stipulation. In his request, appellant describes the affidavit as follows: "The Affidavit in question is recorded as having been filed on May 4, 1961, by Entry No. 17 in the Register of Actions." The copy offered by appellant is described in his request as being a "full, true and correct copy of said Affidavit." The following endorsements are on the first page of said copy: "Office Copy," under which is "Served 5-3-61," and under this is "Filed 5-4-61."

At the time of the hearing, on May 4, 1961, respondents had served and filed three affidavits in support of their

motion and on May 4, 1961, they filed a fourth. These are the first four affidavits summarized above.

The only affidavit offered by appellant at the time of the hearing was that executed by Flehr, the original of which is now missing. The other three affidavits of Flehr were filed thereafter, on June 28, 1961, July 6, 1961, and July 13, 1961, respectively. On June 5, 1961, respondents filed the affidavit of W. Frederick Spence. In this affidavit he stated: "I have read and am familiar with the affidavit of Paul D. Flehr in opposition to the motion for an order restraining him and his law firm from further participation in this case." This could only refer to the affidavit of Flehr which was filed on May 4, 1961, the others being filed after June 5, 1961.

The lower court did not rule upon the motion until June 28, 1961. It is not logical to conclude that the court was not aware of and did not consider the affidavit of Flehr which had been filed in open court on May 4, 1961. The other three Flehr affidavits related to incidental matters and each is extremely short. The first affidavit, on the other hand, is very detailed and takes up six and one-half pages of the transcript. We repeat, it is not conceivable that the lower court was not aware of and did not consider this affidavit in reaching its decision on June 28, 1961. Without such affidavit the motion, as a practical matter, would stand unopposed. Why would the court wait from May 4, 1961, to June 28, 1961 to determine the motion if there was nothing before it in opposition?

6. The order has the effect of shifting to appellant the burden of showing at the trial that Flehr may testify as to certain matters which respondents claim are privileged as to them but which appellant claims are not so privileged. This is not correct.

Section 1881 subdivision 2 of the Code of Civil Procedure states the attorney-client privilege rule as it applies to a *witness*. The rule gives the client the privilege of precluding certain testimony from being elicited. (Witkin, California Evidence, pp. 459-470.) The well settled corollary of this rule is that a client must establish certain elements before he will be allowed the privilege. (*City & County of San Francisco* v. *Superior Court* (1951) 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418]; *Solon* v. *Lichtenstein,* 39 Cal.2d 75, 80 [244 P.2d 907].) The burden is definitely on the

claimant of the privilege. (*Collette* v. *Sarrasin*, 184 Cal. 283 [193 P. 571].)

The restraining order does not enjoin or disqualify Flehr from testifying as a witness. It only prevents him from acting as *attorney* for appellant in this action and from divulging confidential and privileged information as described in the order. The order does not specify what information is confidential and privileged, except as being "any knowledge or information confidential and privileged as to either of said [respondent] corporations, they [Flehr and his firm] or any of them acquired or obtained during the period from October, 1956 to August 1, 1960, . . . concerning matters or transactions the subject of plaintiff's complaint or first amended complaint on file herein."

Assuming that respondents continue to assert the privilege and it is not waived by operation of law, Flehr will not be allowed to testify as to matters which are determined by the trial court to be privileged as to respondents. But this does not mean that, with this limitation, Flehr cannot testify as a witness or that the burden of proving that the privilege applies is not upon the respondents.

Appellant is attributing to the restraining order a result which is not contemplated thereby. Neither section 1881 subdivision 2 of the Code of Civil Procedure nor the order reasonably can be said to preclude the testimony of Flehr or anyone else except as to matters which the trial court determines are privileged and confidential. Nor does the order preclude a waiver by respondents of the privilege.

The order merely requires Flehr and his partners and associates, who previously represented respondents on matters now at issue in this case, to step aside as advocates on appellant's behalf until the case is concluded. The order does not preclude Flehr or anyone else from giving proper testimony as a witness in this or any other case. On the contrary, the order only makes more explicit what the law provides: that Flehr and his associates must not disclose any *confidential and privileged*" knowledge or information that they acquired as attorneys for respondents.

Order affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied March 21, 1963, and appellant's petition for a hearing by the Supreme Court was denied May 1, 1963.