[Civ. No. 49550. Second Dist., Div. Five. Sept. 21, 1977.]

INDUSTRIAL INDEMNITY COMPANY,
Plaintiff, Cross-defendant and Respondent, v.
GREAT AMERICAN INSURANCE COMPANY et al.,
Defendants, Cross-complainants and Appellants.

530

COUNSEL

Harold Q. Longenecker and David Howard Battin for Defendants, Cross-complainants and Appellants.

Shield & Smith and Richard F. Runkle for Plaintiff, Cross-defendant and Respondent.

OPINION

**KAUS, P. J.**—The fact that this appeal is before us and results in a reversal indicates that the problem involved—the professional obligations of counsel who represents a liability insurer as well as its insured—needs clarification.

This is an appeal from the trial court's denial of a motion for an injunction to bar the firm of Shield and Smith and, in particular, attorney Richard F. Runkle from representing plaintiff and cross-defendant Industrial Indemnity Company in an action for declaratory relief and damages, and, from disclosing confidential information. (See *Meehan* v. *Hopps* (1955) 45 Cal.2d 213, 216 [288 P.2d 267].)

FACTS

The background facts which eventually led to the filing of the declaratory relief action are not in dispute. Tomei Construction Company (Tomei) had entered into a construction contract with the City of Manhattan Beach (City). Plaintiff Industrial Indemnity Company (Industrial) was Tomei's liability insurer and, in connection with Tomei's contract with the City, had added endorsements to Tomei's policy which named the City as an additional insured. B. Pecel & Sons (Pecel) was one of Tomei's subcontractors. One Dario Sanchez was an employee of

Pecel who died as a result of injuries received on the job in February 1967.

In June 1967, the heirs of Sanchez filed a wrongful death action against all possible defendants—the "Sanchez action." Industrial retained the firm of Shield and Smith to represent both the City and Tomei, its two insureds. Richard P. Runkle, a member of that firm, was in charge of the litigation. The City was also insured by the Great American Insurance Company (Great American). Great American, however, did not participate in the defense of the Sanchez action. As far as we can ascertain from the record before us Runkle never advised the City that its interests and those of Industrial were in conflict, nor did Industrial or Runkle at first claim that Great American's coverage was involved. In December 1970, however—shortly before the Sanchez action was to go to trial—Industrial and Runkle discussed coverage questions with Great American. Allegedly this somewhat tardy interest in the Great American coverage was triggered by recently acquired knowledge that the City was actively negligent in connection with the Sanchez accident and Industrial's contention that such negligence on behalf of the City was not covered by the endorsements to the Tomei policy or, at least, brought the Great American coverage into the picture as additional insurance.

In any event, Great American declined to get involved. Two months later, on the eve of trial, Runkle, on behalf of Industrial, sent a reservation of rights letter to the City and one Edward L. Le Berthon was retained by Industrial to represent the City. Industrial instructed him to "confer with Richard F. Runkle . . . regarding the involvement of defendant, City of Manhattan Beach, and to handle the defense of the City of Manhattan Beach in trial." The case was not tried, however, but settled a day later for a total payment to the Sanchez heirs of $198,000. Of this sum $30,000 was paid by Pecel, $36,000 by the Los Angeles County Flood Control District and the balance of $132,000 by Industrial and its reinsurance carrier. According to the "settlement documents" in the superior court file on the Sanchez action, this total payment was apportioned to the parties as follows: Tomei $62,000, Los Angeles County Flood Control District $36,000 and City of Manhattan Beach $100,000. The City was apparently never consulted with respect to Industrial's decision to apportion only $62,000 to Tomei and $100,000 to the City.

In September 1973, Industrial filed the present declaratory relief action against Great American and the City. What Industrial wants is a declaration that Great American and the City must reimburse it for the $100,000 Industrial paid to settle the Sanchez action on behalf of the City. The main thrust of Industrial's legal position appears to be that under the terms of the endorsements to the Tomei policy, Industrial insured the City only if the City's liability was "of a secondary, passive and vicarious nature," but that in truth the City's liability in the Sanchez action "was based upon active, independent, negligent conduct" on the part of the City and its employees.[1]

The complaint was signed by Runkle on behalf of Shield and Smith. He has continued to represent Industrial in the declaratory relief action and the effect of the order appealed from is that he may continue to do so.

The City and Great American jointly answered the complaint in January 1974. In December 1975, by leave of court, Great American and the City joined in a cross-complaint against Industrial and Tomei. Relevant allegations in that pleading are that Industrial breached its duties as insurer of the City in various ways, including: (1) retaining one attorney to defend both Tomei and the City in the Sanchez action, even though there was an obvious conflict of interest between those two defendants; (2) by failing to file, on behalf of the City, a cross-complaint for indemnity against Tomei; (3) "by enlisting the aid of the counsel they had hired to develop facts indicating negligence on the part of the CITY in an effort to obtain a substantial contribution from the CITY's other insurer . . . GREAT AMERICAN,"; (4) failure to consult the City when it attributed $100,000 of the Sanchez settlement to it; and (5) defending the City in the Sanchez action in such a way as to minimize Industrial's potential liability.

In February 1976, Industrial answered the cross-complaint by a general denial. On April 1, 1976, Industrial dismissed the City as a defendant. Since the City had filed a cross-complaint, the dismissal was expressly and by necessity with prejudice. (Code Civ. Proc., § 581, subd. 5.)

---

[1]This contention, the merits of which do not concern us, appears to be based on an exception to the endorsement to the Industrial policy which negatives coverage for "any act or omission of [the City] or any of [its] employees, other than general supervision of work performed by [Tomei]; . . ."

The dismissal of the City had been preceded by certain correspondence. On January 17, 1974, Runkle wrote to the city attorney with respect to the declaratory relief action which had not yet been answered by the City. In the last paragraph of his letter he stated that he could see no conflict of interest in representing Industrial in the litigation. He declared, however, that "should it be the desire of any officer, or any member of the City Council of the City of Manhattan Beach that some other firm represent Industrial Indemnity Company in connection with this declaratory relief action, please let me know immediately and I will arrange for the necessary substitution." Two years later, in February 1976, Runkle wrote another letter to the city attorney, in which he expressed unhappiness about the City having joined in the cross-complaint against Industrial and asking for $500,000 in punitive damages. He referred to his letter of January 17, 1974 without, however, expressly renewing his offer to resign as counsel. On March 9, 1976, the city manager wrote Runkle that, in view of the conflict of interest, he had instructed the City's attorney to apply for an order restraining Runkle's firm from continuing as attorneys in the action. Runkle replied on March 10, 1976, revealing that he was about to dismiss the City as a defendant. He expressed the thought that by dismissing the City "the entire problem, which obviously has been the subject of some misunderstanding, will be cleared up."

Proceedings to bar Runkle and his firm from further participation in the action were filed a few weeks later.

### DISCUSSION

We first dispose of an obvious red herring: the dismissal of the City as a defendant. This in no way affected the cross-complaint of the City against Industrial. Rule 4-101 of the Rules of Professional Conduct of the State Bar of California does not distinguish between former clients who are defendants and those who are plaintiffs or cross-complainants.[2] It is therefore irrelevant that, as Runkle declared in opposition to appellants' motion for an injunction, he joined the City as a defendant only because he "felt some judge might consider [the City] a necessary party to be bound by the ultimate judgment entered herein."[3]

---

[2]Rule 4-101 reads as follows: "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client."

[3]Further, we need not consider the position of Great American. Although it claims in

Along the same line it was simply wishful thinking by Runkle when he further declared: "My involvement in this litigation is not, nor has it ever been, adverse to the City of Manhattan Beach, one of the defendants represented by my firm at the request of Industrial Indemnity Company, in the underlying litigation giving rise to this declaratory relief action." Even if Industrial's policy toward the City is one of detente, the City is not willing to let bygones be bygones and is actively pressing its cross-complaint against Industrial.

The meat of Runkle's opposition to the injunction consisted of two points: First, he declared that "there was never any confidential information that was revealed to me, *or could have been revealed to me* or anyone with my firm, with respect to the questions of insurance coverage raised herein." (Italics added.) Second, he points out that since the City and Industrial were "united in a common interest" in the defense of the Sanchez action, communications to their common counsel are not privileged. (Evid. Code, § 962.)

■ Neither argument has merit. There is an obvious overlap between the facts which Runkle, as the City's attorney in the Sanchez action, was required to explore, and the issues in the pending litigation. In the Sanchez action Runkle was bound to investigate all conceivable bases on which the City might be liable to the Sanchez heirs. These might run the gamut from active negligence on the part of a City employee, through liability based on dangerous or defective conditions of public property, to wholly vicarious liability for the acts or omissions of independent contractors. While the exact basis of recovery was probably immaterial to the Sanchez heirs, it appears to be of vital importance in the pending action. As we have seen, it was the alleged discovery by Industrial that the City was actively negligent which led to the assertion, first voiced in December 1970, that the City was not covered by the endorsements to the Tomei policy. While Runkle may be literally correct in stating that no confidential information "with respect to the questions of insurance coverage" was revealed to him by the City, it is inconceivable that if he prepared the case at all, he failed to learn facts which are relevant to the issue of coverage, as his client Industrial sees it: whether the City's exposure in the Sanchez action was "secondary, passive and vicarious" or due to "active, independent" conduct.

its cross-complaint that it was a third party beneficiary of the City's endorsements to the Tomei policy with Industrial, that did not make it Runkle's client.

Runkle's second point is equally without merit. Basically he relies on *Croce* v. *Superior Court*, 21 Cal.App.2d 18 [68 P.2d 369]. *Croce* held that an attorney who had jointly represented two clients and received confidential information, could later represent one client against the other in a matter to which such information was relevant. The reason given was the "joint-clients" exception to the lawyer-client privilege, now found in section 962 of the Evidence Code.[4]

The continued viability of *Croce* has been questioned. (*Goldstein* v. *Lees*, 46 Cal.App.3d 614, 623, fn. 9 [120 Cal.Rptr. 253].)[5] Nevertheless, even if *Croce* is still good law, it is inapplicable. Minimally it presupposes that the former representation of two or more clients "united in a common interest" (*Id.*, at p. 20) was not, itself, a violation of the Rules of Professional Conduct.

In the Sanchez action Runkle had three clients: Industrial, Tomei and the City. We assume that there was no conflict between Industrial and Tomei, whose protection under the Industrial policy appears to have been as broad as its exposure to liability in the Sanchez action. There were, however, obvious conflicts between Industrial and the City, as well as between Tomei and the City. Indeed, both these conflicts have come to a head in the pending declaratory relief action and the City's cross-complaint. The Industrial-City conflict arises from the simple fact that, as Industrial sees it, the City's coverage under the endorsements to the Tomei policy was not as broad as the City's exposure to the Sanchez

---

[4]As will be seen we hold that *Croce* is inapplicable where the joint representation was undertaken or continued without disclosure of conflicting interests and written consent. The parties have not discussed whether such omission negatives the "joint-clients" exception itself. We express no opinion on the point.

[5]In *E.F. Hutton & Company* v. *Brown*, 305 F.Supp. 371, 393-394, the court expressed the view that the *Croce* opinion had overlooked the impact of section 6068, subdivision (e) of the Business and Professions Code, requiring an attorney "to maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client." (*Id.* at p. 393, fn. 59.) It said: "What the court in *Croce* failed to note is that the basis for the rule against representing conflicting interests is broader than the basis for the attorney-client evidentiary privilege. The evidentiary privilege and the ethical duty not to disclose confidences both arise from the need to encourage clients to disclose all possibly pertinent information to their attorneys, and both protect only the confidential information disclosed. The duty not to represent conflicting interests, on the other hand, is an outgrowth of the attorney-client relationship itself, which is confidential, or fiduciary, in a broader sense. Not only do clients at times disclose confidential information to their attorneys; they also repose confidence in them. The privilege is bottomed only on the first of these attributes, the conflicting-interests rule, on both." (Fns. omitted. *Id.* at p. 394.)

heirs. Essentially, the less "vicarious" the City's liability, if any, turned out to be, the less was the danger that the Industrial policy would cover.

Closely related to this diversity of interests—though by no means identical—was the Tomei-City conflict. The basic facts of the Sanchez action involved the death of a workman performing a job on a Tomei contract with the City. Depending on the facts of the case, it was in the cards that the Sanchez heirs might recover against the City, but that the City, in turn, would be entitled to indemnity from Tomei. It will be recalled that one of the grievances of the City, expressed in its cross-complaint, is that Industrial, which controlled the defense of the Sanchez action, failed to file a cross-complaint for indemnity against Tomei.[6] While we have no way of assessing the merits of such a cross-complaint, one does not have to be an expert in the law of indemnity to appreciate that, again, the less "vicarious" the liability of the City turned out to be, the less were its chances of being indemnified by Tomei.

That Runkle represented conflicting interests in the Sanchez action is now plain. (See Rules of Prof. Conduct, rule 5-102(B).)[7] As far as the record shows, the consent of the City to Runkle's representation of conflicting interests was never obtained. (See *Lysick* v. *Walcom,* 258 Cal.App.2d 136, 147 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].) It may well be that the conflict was not apparent when Runkle assumed the defense of the Sanchez action.[8] It must, however, have become obvious sometime before December 1970, when Industrial first asserted its position with respect to the City's coverage under its endorsements. Even then Runkle did not discontinue the relationship. (See *Ishmael* v. *Millington,* 241 Cal.App.2d 520, 526-527 [50 Cal.Rptr. 592].)[9]

---

[6]In answer to an interrogatory in the pending action, Industrial states that no such cross-complaint was filed because "[a]pparently it was the judgment of attorneys, Shield & Smith, that under the law and facts a cross-complaint was not warranted as to Tomei . . . ."

[7]Rule 5-102(B): "A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned."

The issue in this case is not whether Runkle knowingly violated rule 5-102(B) when he acted for several clients in the Sanchez action. It is, rather, whether—given the perspective of hindsight—he should continue to act in the present action.

[8]Quite possibly, too, the Sanchez claim at first appeared too inconsequential to deserve sophisticated analysis concerning actual or potential conflicts. Industrial at first called it a "no liability" case and gave it a nominal reserve of $3,500. Based on information developed through discovery this initial reserve was increased to $20,000 in July 1968, to $35,000 in March 1970 and finally to $125,000 in December 1970.

[9]We totally discount the last minute substitution of attorney Le Berthon with instructions from Industrial to "confer with Richard F. Runkle . . . ." The Sanchez action

■   In sum: even if *Croce* is still good law, it does not apply to a situation where the joint representation of two or more clients with conflicting interests was undertaken or continued without disclosure and written consent.

·■   The injunction barring Runkle and his firm from representing Industrial in the pending action against the City and from disclosing confidential information should have been granted.[10]

In the superior court appellants also prayed for an injunction barring Runkle from testifying in the action. That part of their application was too broad as well as premature. (*Grove* v. *Grove Valve & Regulator Co.,* 213 Cal.App.2d 646, 658 [29 Cal.Rptr. 150].) Runkle is obviously competent to testify as a witness. To what extent any proposed testimony is privileged will depend on the questions asked and the state of the record at the time.[11]

The order appealed from is reversed.

Stephens, J., and Ashby, J., concurred.

---

was settled the next day. We do not know the reason for this substitution. It is not claimed that it affects any of the issues on this appeal.

[10]Injunctions barring former attorneys from disclosing confidential information appear to go hand in hand with injunctions barring them from acting as attorneys against former clients. (*Meehan* v. *Hopps, supra,* 45 Cal.2d 213, 215-216; *Grove* v. *Grove Valve & Regulator Co., supra,* 213 Cal.App.2d 646, 648, 658.)

[11]A caveat is in order. This opinion deals solely with the obligations of counsel who represents insurer and insured. It has nothing to do with the duties of an insurer who is faced with a contractual obligation to defend several insureds with conflicting interests. (See generally *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 279 [54 Cal.Rptr. 104, 419 P.2d 168]; *O'Morrow* v. *Borad,* 27 Cal.2d 794, 798-799 [167 P.2d 483, 163 A.L.R. 894].)