**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3313-23

MUHAMMAD T. MIR, SALMAN
RIAZ, AQSA KHAN, MT.
PROSPECT PHARMACY CORP.
and MUHAMMAD S. MIR,

      Plaintiffs-Respondents,

v.

IBRAR A. NADEEM, BROOK
PHARMACY, INC., SCOTCH
PLAINS SPECIALTY
PHARMACY, LLC,

      Defendants/Third-Party
      Plaintiffs-Appellants,

v.

ABDUL NAZ,

      Third-Party Defendant.

_____

Argued November 14, 2024 – Decided December 6, 2024

Before Judges Mawla and Vinci.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8411-21.

Robert A. Mintz argued the cause for appellants (McCarter & English, LLP, attorneys; Robert A. Mintz, Gregory J. Hindy and Brian W. Carroll, on the briefs).

Steven I. Adler argued the cause for respondents (Mandelbaum Barrett, PC, attorneys; Steven I. Adler and Grant Petrosyan, on the brief).

PER CURIAM

We granted defendants Ibrar A. Nadeem, Brook Pharmacy, Inc. (Brook Pharmacy), and Scotch Plains Specialty Pharmacy, LLC (Scotch Plains Pharmacy) leave to appeal from the May 24, 2024 order denying their motion to disqualify the law firm of Mandelbaum Barrett PC (Mandelbaum) from representing plaintiffs Muhammad T. Mir, Salman Riaz, Aqsa Khan, Mt. Prospect Pharmacy Corp., and Muhammad S. Mir in this action. We affirm.

I.

Romana Kaleem, Esq., was a partner with the law firm Shiliwala, Janjua & Kaleem LLC (SJK) until August 2023, when she joined Mandelbaum as counsel during the pendency of this action. Prior to joining Mandelbaum, Kaleem represented Brook Pharmacy and Scotch Plains Pharmacy (collectively, the pharmacies) in certain transactional matters. Kaleem's representation of the

2

pharmacies before she joined Mandelbaum is the basis for defendants' disqualification motion.

In October 2018, SJK entered into an engagement agreement with Brook Pharmacy to perform certain specified legal work related to the acquisition of the lease and fixtures of an existing pharmacy in Bronx, New York. The scope of work in the engagement agreement included drafting, reviewing, and negotiating a bill of sale and ancillary closing documents; reviewing a lease and lease assignment; representing the pharmacy at closing; preparing and submitting a pharmacy license application to the New York State Board of Pharmacy; drafting a shareholder agreement; drafting pharmacist and pharmacy manager employment agreements; and drafting promissory notes and security agreements. Kaleem was the SJK attorney with sole or primary responsibility for the Brook Pharmacy matter.

From 2018 through 2021, Kaleem prepared and filed numerous documents with the State of New York and the federal government indicating Nadeem was the sole owner of Brook Pharmacy. These documents included the: September 26, 2018 application for pharmacy registration to the New York Education Department, Board of Pharmacy; July 9, 2019 Medicaid enrollment application to the New York State Department of Health; March 11, 2019 Medicare

3

enrollment application to the United States Department of Health Center for Medicare & Medicaid Services (CMS); and June 3, 2021 Medicare Part B enrollment application to CMS.

In April 2019, SJK entered into a similar engagement agreement with Scotch Plains Pharmacy to perform certain specified legal work related to the formation of the pharmacy including reviewing a lease; preparing and submitting a pharmacy license application to the New Jersey Board of Pharmacy; drafting an operating agreement; drafting pharmacist and pharmacy manager employment agreements; and drafting promissory notes and security agreements. Kaleem was the SJK attorney with sole or primary responsibility for the Scotch Plains Pharmacy matter. On May 6, 2019, Kaleem filed an application for pharmacy registration with the New Jersey Board of Pharmacy that identified Nadeem as the sole owner of Scotch Plains Pharmacy.

After the pharmacies were established, a dispute arose between Riaz, Khan, and Nadeem over their alleged ownership interests in the businesses. Nadeem contended he was the sole owner, while Riaz and Khan alleged they shared ownership with Nadeem based on a loan made in connection with the acquisition and formation of the pharmacies.

4

On June 29, 2021, the parties entered into a settlement agreement and release (the settlement agreement) in which Riaz and Khan agreed Nadeem was the sole owner of the pharmacies. It is undisputed Kaleem did not represent any of the parties, including the pharmacies, in connection with the settlement agreement. The settlement agreement contains, as an "essential and material part of [the] [a]greement," a non-disparagement provision, which includes an acknowledgement by Riaz and Khan "that they never owned any interest in" the pharmacies.

On November 8, 2021, plaintiffs filed their initial complaint in this action alleging Nadeem breached the confidentiality provision contained in the settlement agreement. Plaintiffs asserted causes of action for breach of the settlement agreement; declaratory judgment; conspiracy; tortious interference with contract and prospective economic advantage; malicious use and abuse of process; and defamation. The pharmacies were named as defendants, but there were no direct claims for damages asserted against them. The complaint demanded a declaratory judgment that the settlement agreement is "null and void" and Riaz and Khan "continue to have majority ownership of" the pharmacies.

5

On November 9, 2022, plaintiffs filed a second amended complaint asserting the same causes of action and seeking a declaratory judgment that the settlement agreement is "null and void" and Riaz and Khan "continue to have majority ownership interest in [the pharmacies,] (which interests they owned prior to entering into the [settlement agreement])." Plaintiffs also allege Nadeem "caused [the pharmacies] to breach the [s]ettlement [a]greement[]" and seek compensatory and punitive damages from the pharmacies for damages "as a result of the breach[] of the [s]ettlement [a]greement[] by Nadeem [and the pharmacies]."[1]

On October 31, 2022, Kaleem received an email from Nadeem authorizing her to release "paperwork" regarding the pharmacies to his counsel, Robert Mintz, Esq., at the law firm McCarter & English, LLC. On January 13, 2023, Mintz wrote to Kaleem requesting the "complete file[s] with regard to [her] [prior] representation of . . . Nadeem [and the pharmacies]." Kaleem subsequently delivered the requested files to Mintz.

On July 11, 2023, Kaleem received a subpoena seeking production of documents and her deposition. By that time, Kaleem had accepted an offer of

---

[1] Because plaintiffs allege the pharmacies breached the settlement agreement and seek damages from them as a result, their argument that the pharmacies were named only as nominal parties lacks merit.

A-3313-23

employment with Mandelbaum and was scheduled to join the firm on August 7. On August 12, in connection with her communications with Mintz regarding the subpoena, Kaleem advised him that she was "no longer at SJK and [was] practicing with [Mandelbaum]" and her new "email address [was] rkaleem@mblawfirm.com."

On January 12, 2024, defendants served a second subpoena on Kaleem seeking her deposition. Kaleem resigned from Mandelbaum around the same time. On January 30, she advised Mintz she was "no longer practicing law at Mandelbaum except on a very limited basis."[2] It is undisputed that Kaleem did not work on this matter during her employment with Mandelbaum and she did not transfer any documents relating to her representation of the pharmacies to Mandelbaum.

On February 14, defendants moved to disqualify Mandelbaum pursuant to Rules of Professional Conduct (RPC) 1.9 and 1.10. Defendants' motion "begins and ends with the fact that . . . Kaleem represented the [p]harmacies on the ultimate issue in the case: whether . . . Nadeem was the sole owner of the [p]harmacies prior to the [s]ettlement [a]greement." Defendants contend "[t]hat

---

[2] Plaintiffs contend Kaleem's relationship with Mandelbaum continued "for the limited purpose of winding up . . . two matters for two clients" unrelated to this matter.

issue, which is clear based on the unchallenged documents prepared by . . . Kaleem, is substantially related to the present [a]ction in which her law firm's current clients, [plaintiffs], are now materially adverse to her former clients, the [p]harmacies."

On March 22, 2024, the court heard oral argument and entered an order denying the motion without prejudice supported by an oral opinion. The court found Kaleem's prior representation of the pharmacies was not substantially related to this matter. It reasoned this case has "nothing to do with what created [the pharmacies] and everything to do with whether or not . . . Nadeem breached the [settlement] agreement" and "there does not appear to be any likelihood of further discussion about the formation, creation[,] and the like."

The court also found plaintiffs are not materially adverse to the pharmacies in this matter. It reasoned "[t]he worst outcome for [the pharmacies], the entities, is that somebody else owns them" and "[they] are more parties for notice than anything else." The court continued, "there[ is] not a single allegation that [the pharmacies], the entities, did anything. They[ are] the prize. They[ are] not the actor. The actor is the principal. And the principal is going to lose the prize if" plaintiffs prevail.

During oral argument, however, defendants argued SJK's engagement letters were ambiguous, and it was "unclear whether [Kaleem] represented [Nadeem] individually" and did work for him in addition to her work for the pharmacies.  The court determined "given that [defense counsel] raised these ambiguities . . . we[ are] going to need to clear up that ambiguity" through "a deposition alone or a deposition followed by a hearing."  It denied the motion "without prejudice based on the fact disputes" and ordered the depositions of Kaleem, Riaz, and Nadeem, limited to the issues of "[w]ho [Kaleem] represented, . . . what was in the contemplation of the parties when she was retained[,] and . . . the work that she did."

On April 10, without conducting any of the depositions ordered by the court, defendants moved for reconsideration.  Defendants argued they did not pursue depositions because they were "not moving on the question of whether [Kaleem] represented [Nadeem] individually."[3]  On May 24, the court heard oral

---

[3]  Defendants argued the issue of Kaleem's alleged representation of Nadeem "need not be addressed because the conflict is enough with her representation of the pharmacies."  Because defendants elected to forego that argument in the trial court and did not raise it on appeal, the argument that Kaleem represented Nadeem is waived.  See Chirino v. Proud 2 Haul, Inc., 458 N.J. Super. 308, 318 (App. Div. 2017) (generally, appellate courts "decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentation is available"); see Telebright Corp. v. Dir., N.J. Div. of Tax'n, 424

argument and entered an order denying the motion supported by an oral opinion. The court denied the motion because it had "nothing different in front of it" and was "satisfied that its assessment of the facts . . . in the record required it to refrain from granting the relief and instead direct that a fuller record be developed, so that the [c]ourt could grant or deny the relief based on a more robust record."

The court also expressed concern that the disqualification motion was made for delay and tactical advantage because defendants waited six months after learning Kaleem joined Mandelbaum to file it. By that time, defendants were aware of Kaleem's prior work and had already obtained her files. The court noted, "that much of this [motion] is designed to create delay . . . [and] is strategic . . . ."

The court denied defendants' motion for a stay pending appeal. We granted defendants' motion for leave to appeal and a stay pending appeal.

---

N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any supporting arguments in its brief); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024) ("[A]n issue not briefed is deemed waived.").

II.

"[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010); see also Greebel v. Lensak, 467 N.J. Super. 251, 257 (App. Div. 2021) ("We review a decision on a disqualification motion de novo.").

Disqualification of counsel is considered a "harsh discretionary remedy which must be used sparingly." Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 572 (App. Div. 2000). Such motions are "viewed skeptically in light of their potential abuse to secure tactical advantage." Escobar v. Maize, 460 N.J. Super. 520, 526 (App. Div. 2019). "In evaluating motions for the disqualification of counsel for an adversary pursuant to this RPC," courts must "balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose [their] counsel." Twenty-First Century Rail Corp. v. N.J. Transit Corp., 210 N.J. 264, 273-74 (2012) (quoting Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988)). In doing so, the court must undertake a "painstaking analysis of the facts." Dental Health Assocs. of S. Jersey, P.A. v. RRI Gibbsboro, LLC, 471 N.J. Super. 184, 192 (App. Div. 2022) (quoting Dewey, 109 N.J. at 205).

"[T]o strike that balance fairly, courts are required to recognize and to consider that 'a person's right to retain counsel of [their] choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement.'" Twenty-First Century Rail Corp., 210 N.J. at 274 (quoting Dewey, 109 N.J. at 218). "Only in the extraordinary cases should a client's right to counsel of [their] choice outweigh the need to maintain the highest standards of the profession." Dewey, 109 N.J. at 220.

Parties seeking disqualification initially bear the burden of production to show that the attorneys previously represented them "and that the present litigation is materially adverse to [their] interests." Trupos, 201 N.J. at 462. If the movants make that showing, "the burden shifts to the attorneys sought to be disqualified to demonstrate that the matter or matters in which . . . they represented the former client are not the same or substantially related to the controversy in which the disqualification motion is brought." Id. at 463. Still, "the burden of persuasion on all elements under RPC 1.9(a) remains with the moving party, as it 'bears the burden of proving that disqualification is justified.'" Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. V.J., 386 N.J. Super. 71, 75 (Ch. Div. 2004)).

RPC 1.9 concerns attorneys' "[d]uties to former clients" and resulting conflicts of interest. Defendants rely exclusively on RPC 1.9(a) which provides, "[a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing."

RPC 1.9(a)'s "prohibition is triggered when two factors coalesce: the matters between the present and former clients must be 'the same or . . . substantially related,' and the interests of the present and former clients must be 'materially adverse.'" Trupos, 201 N.J. at 462 (quoting RPC 1.9(a)).

> [F]or purposes of RPC 1.9, matters are deemed to be "substantially related" if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.
>
> [Id. at 467.]

Pursuant to RPC 1.10, a conflict of interest under RPC 1.9(a) generally "is 'imputed to all members of a law firm, disqualifying all if any one would be disqualified.'" N.J. Div. of Child Prot. & Permanency v. G.S., 447 N.J. Super. 539, 565 (App. Div. 2016) (quoting State ex rel. S.G., 175 N.J. 132, 138

13

(2003)).[4]  To determine whether Mandelbaum must be disqualified pursuant to RPC 1.10, we must first determine if Kaleem would be disqualified from representing plaintiffs in this case.

III.

Defendants contend Kaleem is disqualified because the representation of plaintiffs is substantially related to her prior representation of the pharmacies. We are not convinced.

Specifically, defendants argue Kaleem previously represented the pharmacies and filed various documents stating Nadeem was the sole owner of the pharmacies prior to the settlement agreement.  In this case, plaintiffs contend Riaz and Khan held a majority interest in the pharmacies prior to the settlement agreement.  Thus, they contend facts relevant to Kaleem's prior representation of the pharmacies–facts relating to who owned the pharmacies–are "relevant and material to the subsequent representation."  Plaintiffs, they allege, cannot establish they are the owners of the pharmacies without discrediting Kaleem's prior work indicating Nadeem was the sole owner prior to the settlement agreement.

---

[4]  The exception permitting a personally disqualified lawyer to be "timely screened from any participation in the matter" set forth in RPC 1.10(c) is inapplicable because Kaleem had primary responsibility for the matters at SJK.

Defendants reach this conclusion only by misconstruing the definition of "substantially related" established by our Supreme Court in <u>Trupos</u>. The reference to "the subsequent representation" in the second prong of the <u>Trupos</u> test necessarily means the "subsequent representation of parties adverse to the former client" as described in the first prong. Thus, the "facts relevant to the prior representation" must be "both relevant and material to the subsequent representation [of parties adverse to the former client]." Defendants cannot make such a showing in this case.

As the trial court correctly determined, the dispute over ownership of the pharmacies is between plaintiffs and Nadeem, not between plaintiffs and the pharmacies. To the extent facts relevant to Kaleem's prior representation of the pharmacies are "relevant and material," they are relevant and material to the representation of parties adverse to Nadeem, not the representation of "parties adverse to" Kaleem's former clients, the pharmacies. Because facts related to the ownership of the pharmacies are not material and relevant to any claims asserted by plaintiffs against the pharmacies, the matters are not "substantially related."

We are likewise unpersuaded by defendants' argument that disqualification is required because the interests of the present and former

15

clients are "materially adverse." Defendants identify two ways in which the parties to the action are materially adverse: (1) plaintiffs dispute Nadeem's claim that he was the sole owner of the pharmacies prior to the settlement agreement; and (2) plaintiffs assert causes of action and claims for damages against the pharmacies for their alleged tortious acts after the settlement agreement was executed.

In the context of a disqualification analysis, the concept of "materiality" necessarily requires some nexus between the adversity and the lawyer's prior representation of the former client. In other words, the interests of the present and former clients must be adverse in a way that implicates the prior work done by the lawyer for the former client. Defendants cannot demonstrate material adversity in this case. Instead, they attempt to demonstrate "material" adversity by conflating the irrelevant adversity between plaintiffs and the pharmacies with the relevant adversity between plaintiffs and Nadeem over ownership of the pharmacies.

The trial court correctly determined the dispute over ownership of the pharmacies does not represent adversity between the interests of Kaleem's present and former clients. That dispute is between plaintiffs and Nadeem, and Kaleem did not previously represent Nadeem. The only true adversity between

16

plaintiffs and the pharmacies arises out of the pharmacies' alleged tortious conduct after the settlement agreement was executed. Kaleem's work was not related in any way to those claims and therefore there is no nexus between Kaleem's prior presentation of the pharmacies and plaintiffs' claims against the pharmacies in this case. To the extent there is "adversity" between plaintiffs and the pharmacies, it is not "material" for purposes of the disqualification analysis.

Defendants reliance on Grove v. Grove Valve & Regulator Co., 213 Cal. App. 2d 646 (1963), is misplaced. In that case, the court held a lawyer may not "use against [their] former client any knowledge or information acquired through their former connection." Id. at 652. The court determined the attorney in that case was representing a client "adverse to the interests of his former clients" because the lawyer "was suing them over matters which [were] related to" matters "in which he represented [them] as their attorney." Id. at 653. As discussed above, any adversity in this case related to matters in which Kaleem represented the pharmacies is between plaintiffs and Nadeem, not between plaintiffs and the pharmacies.

17

Defendant's reliance on Formal Opinion 497 of the Standing Committee on Ethics and Professional Responsibility of the American Bar Association[5] is not convincing for the same reasons.[6]  That opinion provides an attorney's attempt to attack or undermine work done for a former client may create "material adverseness."  However, "[t]hese situations . . . do not lend themselves to a 'bright line' test' of when there is and is not material adverseness."  ABA Formal Op. 497.  As discussed previously, any adversity created by plaintiffs' potential attack on Kaleem's prior work for the pharmacies in this case would not be material to the question of disqualification because plaintiffs' interests on that claim are adverse to Nadeem rather than the pharmacies.

---

[5]  Am. Bar Ass'n Standing Comm. on Ethics & Prof'l Resp. "Conflicts Involving Materially Adverse Interests" Formal Op. 497 (Feb. 10, 2021).

[6]  In addition to being non-binding, the opinion is based on authority that is readily distinguishable.  See, e.g., Nasdaq, Inc. v. Miami Int'l, No. 17-6664-BRM-DEA, 2018 WL 617819, *4-6 (D.N.J. Nov. 26, 2018) (considering prejudice to the former client in addition to attacking lawyer's prior own work in support of a claim against the former client when determining disqualification); North Carolina Bar Ass'n v. Sossoman, 197 N.C. App. 261, 274 (2009) (finding material adversity because the representation of the new client "would have necessarily impeded [lawyer's] ability to represent to satisfactorily complete the representation of the previous client"); Zerger v. Mauer, 751 F.3d 928, 934 (8th Cir. 2014) (finding material adversity when representation of new client required lawyer to directly frustrate legal interests of former client).

Like the trial court, we too recognize the six-month delay in filing the disqualification motion gives rise to an inference it was made for tactical purposes. Courts are loathe to permit disqualification to be used "to secure tactical advantage." Escobar, 460 N.J. Super. at 526. That is particularly true where, as here, the arguments in favor of disqualification are weak at best. The trial court correctly determined defendants did not meet their burden to demonstrate Kaleem is disqualified from representing plaintiffs in this matter. We therefore need not reach defendants' claim that Mandelbaum is disqualified pursuant to RPC 1.10.

To the extent we have not specifically addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed. The stay will remain in place for twenty days to permit defendants to seek a further review and stay from our Supreme Court.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-3313-23